# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **KAY HARRISON SMITH,** | : | **CASE NO. 1:08cv00060** |
| | : | **(J. Barrett)** |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **HAMILTON COUNTY PARK** | : | |
| **DISTRICT, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT HAMILTON COUNTY PARK DISTRICT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Hamilton County Park District hereby moves the Court for summary judgment in its favor as to all of Plaintiff's claims as there exist no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. This Motion for Summary Judgment is supported by the following: Memorandum; Depositions (cited portions and exhibits are attached to the Appendix herein) of Kay Harrison Smith (Vol. I-V), Joyce Stapleton, and Dr. Kenneth Manges; Affidavits of Defendants Newsom, Spreckelmeier, Sutton, and Hoffman; and Affidavits of Greg Grimm and Mark Brooksbank. A separate Motion for Summary Judgment, incorporated herein by reference, has been filed on behalf of the five individual Defendants, as well as the Board of Park Commissioners, as to all of Plaintiff's claims.

 s/Lawrence E. Barbiere
Lawrence E. Barbiere,  Ohio Bar Number: 0027106
Michael E. Maundrell,  Ohio Bar Number: 0027110
*Attorneys for Defendants*
**SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
5300 Socialville-Foster Road, Suite 200
Mason, Ohio 45040
(513) 583-4200
(513) 583-4203 (fax)
Email:  lbarbiere@smbplaw.com

## TABLE OF CONTENTS

**MOTION FOR SUMMARY JUDGMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

**MEMORANDUM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**I.      STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
**II.     LAW AND ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
**A.      SUMMARY JUDGMENT STANDARD** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Thompson v. Potter, 2006 WL 783395 (S.D. Ohio, E.D. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**B.      THE PARK DISTRICT IS ENTITLED TO SUMMARY JUDGMENT
         AS TO HARRISON SMITH'S CLAIMS OF SEX DISCRIMINATION
         AND RETALIATION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

      **1.      Harrison Smith's Failure to Promote Claims Are Barred By Her
            Failure to File a Charge Within  the Statutorily Mandated Limitations
            Period .** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Amini v. Oberlin College, 259 F.3d 493, 498 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
Black v. Columbus Public Schools, 211 F.Supp.2d 975, 980 (S.D. Ohio, E.D. 2002),
    aff'd in part, vacated in part, 79 Fed. Appx. 735, 2003 WL 22114027*2 (6th Cir. 2003) . . . . . . 26

      **2.      Harrison Smith Cannot Establish the Essential Elements of Her Claim
            for Disparate Treatment Based on Sex Under Title VII or O.R.C. §4112.** . . . . . . . . 26

White v. Columbus Metropolitan Housing Authority, 429 F.3d 232, 238 (6th Cir. 2005) . . . . . . . . . . . . 26

        **a)      Harrison Smith cannot establish her *prima facie* case of sex
            discrimination with direct evidence.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Taylor v. H.B. Fuller Company, 2008 WL 4647690*7 (S.D. Ohio, W.D. 2008) . . . . . . . . . . . . . . . 27
Thompson, 2006 WL 783395 at *16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Wofford v. Middletown Tube Works, Inc., 67 Fed. Appx. 312, 315 (6th Cir. 2005) . . . . . . . . . . . . . . . 27
Crawford v. Medina General Hospital, 96 F.3d 830, 835 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 28
Johnson v. The Kroger Company, 319 F.3d 858, 865 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . .  28

        **b)      Harrison Smith cannot establish her *prima facie* case of
            sex discrimination with indirect evidence.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Peltier v. United States of America, 388 F.3d 984, 987 (6th Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . 28

Grosjean v. First Energy Corp., 349 F.3d 332, 336 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Lilley v. BTM Corp., 958 F.2d 746, 752 (6th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Michael v. Caterpillar Financial Services Corporation, 496 F.3d 584, 593 (6th Cir. 2007). . . . . . . . 29, 33

Nickell v. Memphis Light, Gas & Water Division, 76 Fed. Appx. 87, 93,

    2003 WL 22205073 *5 (6th Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32

Ford v. Hamilton County Juvenile Court, 2007 WL 2302816 *6-7 (S.D. Ohio, W.D. 2007).. . . 30, 32, 33

White, 429 F.3d at 240.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Brewer v. Cedar Lake Lodge, Inc., 243 Fed. Appx. 980, 988 fn6 (6th Cir. 2007). . . . . . . . . . . . . . . . . 32

Hedrick v. Western Reserve Care System, 355 F.3d 444, 462 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . 32

Browning v. Dept. of the Army, 436 F.3d 692, 697-98 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 32

Hartsel, 87 F.3d at 803-804. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Vaughn v. Louisville Water Co., 302 Fed. Appx. 337, 348 (6th Cir. 2008).. . . . . . . . . . . . . . . . . . . . . . 32

Wofford, 67 Fed. Appx. at 316. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Kinamore v. EPB Electric Utility, 92 Fed. Appx. 197, 202-203 (6th Cir. 2004). . . . . . . . . . . . . . . . . . 32

Yates v. Avco Corp., 819 F.2d 630, 638 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Momah v. Dominguez, 239 Fed. Appx. 114, 123-24 (6th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . 32

White v. Burlington Northern & Santa Fe Railway Co., 364 F.3d 789, 803-04 (6th Cir. 2005). . . . . . . 32

Barrett v. Lucent Technologies, Inc., 36 Fed. Appx. 835, 842 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . 32

Adair v. Charter County of Wayne, 452 F.3d 482, 490 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 33

SERB v. City of Cortland, 8 Ohio Pub. Employee Rep. ¶1622.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Madison Township Board of Trustees v. Donohoo, 1994 WL 692929*6

    (Ohio App. 2nd Dist. Oct. 12, 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Launius v. Board of Fire and Police Com'rs of City of Des Plaines, 151 Ill.2d 419, 436

    (Illinois 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**3.**    **Harrison Smith Cannot Establish the Essential Elements of Her Claim for Retaliation for Pursuing Her Rights Under Title VII or O.R.C. §4112.**.. . . . . . . . . . 33

Taylor, 2008 WL 4647690 at*7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Lahar v. Oakland County, 304 Fed. Appx. 354, 357 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Mickey v. Zeidler Tool and Die Company, 516 F.3d 516, 523 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . 34

    **a)**    **Harrison Smith cannot establish protected conduct.**. . . . . . . . . . . . . . . . . . . . 35

Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989). . . . . . . . . . . . 35-37

Johnson v. University of Cincinnati, 215 F.3d 561, 579-80 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 36

Hartsel, 87 F.3d at 804-805. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Matima v. Celli, 228 F.3d 68, 79 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Jones v. Franklin County Sheriff, 52 Ohio St.3d 40, 43, 555 N.E.2d 940, 944 (1990).. . . . . . . . . . . . . 38

Thompson, 2006 WL 783395 at *12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

E.E.O.C. v. Sara Lee Corp., 237 F.3d 349, 356 (4th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

    **b)**    **Harrison Smith cannot establish the majority of the actions of the Park District to which she objected qualify as adverse**

**employment actions even in the retaliation context.**. . . . . . . . . . . . . . . . . . . . 38

Taylor, 2008 WL 4647690 at *9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Randolph v. Ohio Dept. of Youth Services, 453 F.3d 724, 736 (6th Cir. 2006).. . . . . . . . . . . . . . . . . 39
Michael, 496 F.3d at 596. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Lahar, 304 Fed. Appx. at 357.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

        **c)      Harrison Smith cannot establish a causal connection.**. . . . . . . . . . . . . . . . 39

Johnson, 215 F.3d at 582. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Booker, 879 F.2d at 1314.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Lahar, 304 Fed. Appx. at 359.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
Ford, 2007 WL 2302816 at *11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**C.     THE PARK DISTRICT IS ENTITLED TO SUMMARY JUDGMENT AS TO
        HARRISON SMITH'S CLAIMS OF SEXUAL HARASSMENT.**. . . . . . . . . . . . . . . . . . 40

Randolph, 453 F.3d at 733. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

        **1.     Harrison Smith Was Not Subjected to Unwelcome Harassment Based on Sex.**. . . . 41

Bowman v. Shawnee State University, 220 F.3d 456, 464 (6th 2000). . . . . . . . . . . . . . . . . . . . . . . 41
Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000).. . . . . . . . . . . . . . . . . . . . 41
Crawford v. Medina General Hospital, 96 F.3d 830 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . 42
Peecook v. Northwestern National Insurance Group, 156 F.3d 1231, 1998 WL 476245 (6th Cir. 1998). 42

        **2.     There Was No Hostile Work Environment.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Hall v. Hebrank, 102 F.Supp.2d 844, 854 (S.D. Ohio, W.D. 1999). . . . . . . . . . . . . . . . . . . . . . . . . 43
Bowman, 220 F.3d at 461. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
Nickell, 76 Fed.Appx. at 94. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
Hapner v. South Community, Inc., 2005 WL 3446274 (Ohio App. 2 Dist. Dec. 16, 2005). . . . . . . . . . 43
Randolph, 453 F.3d at 733. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4344
Blankenship v. Parke Care Centers, Inc., 913 F.Supp. 1045, 1050 (S.D. Ohio 1995).. . . . . . . . . . . . . .

**D.     THE PARK DISTRICT IS ENTITLED TO SUMMARY JUDGMENT AS TO
        HARRISON SMITH'S CLAIMS OF DISABILITY AND AGE DISCRIMINATION
        AND RETALIATION.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

        **1.     Harrison Smith Failed to Exhaust Administrative Remedies Prior to
                Filing Her Claims for Disability Discrimination Under the ADA and
                Age Discrimination Under the ADEA.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Abeita v. Transamerica Mailings, Inc., 159 F.3d 246, 254 (6th Cir. 1998). . . . . . . . . . . . . . . . . . 45, 46

iv

Monnheimer v. A.C. Nielsen, 2008 WL 5333808*4 (S.D. Ohio, W.D. 2008). . . . . . . . . . . . . . . . . . . 45
Amini, 259 F.3d at 498. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
Smith v. United States Postal Service, 742 F.2d 257, 262 (6th Cir. 1984). . . . . . . . . . . . . . . . . . . . . 45
Jones v. Sumser Retirement Village, 209 F.3d 851, 853 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 45
Metzenbaum v. John Carroll Univ., 987 F.Supp. 610, 618 (N.D. Ohio, E.D. 1997). . . . . . . . . . . . . . 46

**2.      Harrison Smith Cannot Establish the Essential Elements of Her Claims for
          Disability Discrimination Under the ADA or O.R.C. §4112.** . . . . . . . . . . . . . . . . . . 46

Hedrick v. Western Reserve Care System, 355 F.3d 444, 454 (6th Cir. 2004).  . . . . . . . . . . . . . . . . 46
Macy v. Hopkins County School Board of Education, 484 F.3d 357, 364 fn2 (6th Cir. 2007).  . . . . . . 46
Monette, 90 F.3d at 1177. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

          **a)      Harrison Smith failed to allege and can not establish she was "disabled"
                    under the ADA.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Daugherty v. Sajan Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . 48
Marziale, 2007 WL 4224367 at *4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
Thompson v. Potter, 2006 WL 783395 *9 (S.D. Ohio, E.D. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 48

          **b)      Harrison Smith failed to allege and can not establish she was
                    "otherwise qualified."** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Manigan v. SORTA, 2009 WL 174137*7 (S.D. Ohio, W.D. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Thompson, 2006 WL 783395 at *14. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50
Monette, 90 F.3d at 1187. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 883 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . 49
Peltier, 388 F.3d at 989. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

**3.      Harrison Smith Cannot Establish the Essential Elements of Her Claim for
          Age Discrimination Under the Age Discrimination in Employment Act ("ADEA")
          or O.R.C. §4112.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Sauer, 2008 WL 731492. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51
Hile v. Pepsi-Cola, 108 F.3d 1377, 1997 WL 112404*5 (6th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . 51
Gross, 2009 WL 1685684 at *7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51
Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 357 (6th Cir. 1998). . . . . . . . . . . . . . . . 51

**4.      Harrison Smith Cannot Establish the Essential Elements of Her Claim for
          Retaliation Under the ADA, ADEA, and O.R.C. §4112.** . . . . . . . . . . . . . . . . . . . . . 52

Sauer, 2008 WL 731492. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
Fox v. Eagle Distributing Company, Inc., 510 F.3d 587, 591 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . 52

**E.     THE PARK DISTRICT HAS PRODUCED LEGITIMATE, NONDISCRIMINATORY REASONS FOR ITS EMPLOYMENT ACTIONS.**...................................53

Hartsel, 87 F.3d at 800..............................................................53

**F.     HARRISON SMITH CANNOT PURSUE A §1983 CLAIM BASED UPON CONDUCT IN VIOLATION OF TITLE VII, THE ADEA, OR THE ADA.**........................53

Day v. Wayne County Bd. of Auditors, 749 F.2d 1199, 1204 (6th Cir. 1984).....................53
Janes v. Bardstown City Schools Bd. of Educ., 1996 WL 536794* 4 (6th Cir. 1996)...............54
Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1531 (11th Cir. 1997).......................54

**G.     THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER HARRISON SMITH'S STATE LAW CLAIMS.**....................................54

28 U.S.C. §1367( c)(3)................................................................54
Sibley v. Putt, 2007 WL 2840392 *2 (S.D. Ohio, W.D. 2007).................................54

**H.     THE PARK DISTRICT IS IMMUNE FROM LIABILITY FOR HARRISON SMITH'S STATE LAW CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, INVASION OF PRIVACY, AND SPOLIATION.**........54

Ohio Revised Code §2744.02(A)(1)......................................................54
Chase v. Brooklyn City School District, 141 Ohio App.3d 9, 19 (8th Dist. 2001)..................55
Zieber v. Heffelfinger, 2009 WL 695533 *4 (Ohio App. 5th Dist. 2009).........................55
Wilson v. Stark County Dept. Of Human Services, 70 Ohio St.3d 450, 4512 (1994)...............55

**I.     HARRISON SMITH IS NOT ENTITLED TO PUNITIVE DAMAGES.**...............55

R.C. 2744.05(A)....................................................................55

**J.     HARRISON SMITH CANNOT ESTABLISH THE ESSENTIAL ELEMENTS OF HER CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.**........55

Williams v. York International Corporation, 63 Fed.Appx. 808, 814, 2003 WL 1819637*5 (6th Cir. 2003)..............................................................55

**III.    CONCLUSION.**...................................................................56

**CERTIFICATE OF SERVICE.**...................................................56

**APPENDIX.**.........................................................................57

## MEMORANDUM

### I.    STATEMENT OF FACTS

Harrison Smith was hired by the Hamilton County Park District ("Park District")[1] Ranger

Department in 1984 as a Dispatcher and was subsequently promoted to Ranger.  Harrison Smith's

husband Gregory T. Smith ("Smith") was likewise employed by the Ranger Department until he retired

in 2002.  Harrison Smith was not eligible for promotion to the next rank of Sergeant until Smith's

retirement.[2]   Harrison Smith was promoted to Sergeant in 2002.  (Newsom Aff., ¶1.)

Harrison Smith served as Sergeant from 2002 until she was promoted to Lieutenant in February

of 2005, except for a period during 2004 when she performed "temporary duty as manager" at the

Winton Woods Riding Center.[3]  (Harrison Smith Dep. 946, DX 23.)[4]  This temporary duty was at the

---

[1] The Defendants Hamilton County Park District, Board of Park Commissioners, and the individual Defendants Steve Newsom, Richard Spreckelmeier, Jack Sutton, Nancy Montague, and Gary Hoffman, in their "official capacities," will be referred to herein as the "Park District." The individual Defendants, in their "individual capacities," have filed a separate Motion for Summary Judgment, incorporated herein by reference.

[2] The Park District policy in effect prior to Smith's retirement prohibited employees from supervising other employees within the same department. As Smith and Harrison Smith were already married at the time of the policy, they were grandfathered as an exception.  The current policy is broader as it prohibits the hiring of relatives within the Park District.  Related employees who were hired prior to implementation of the broader policy were grandfathered as an exception.  (Sutton Aff., ¶1.)  Harrison Smith applied for the first time for Sergeant in 1999; however, upon being made aware of the policy against an employee supervising another within the Department, and the fact a promotion would have placed her within the direct supervision of her husband, Harrison Smith withdrew her application.  (Hoffman Aff., ¶ 1.)

[3] As a result of this temporary duty, Harrison Smith received "no formal evaluation" for 2004, but did receive a 3.5% merit increase in pay.  (HS Dep. 946, DX 23.) She also received the Director's Trillium Award for her work at the Riding Center. Her immediate supervisor, Lt. Norm Kandil prepared a memorandum for the period of November 1, 2003 through October 31, 2004, noting "Kay was not evaluated as a Ranger Sergeant due to her temporary assignment as Interim Manager at the WW Riding Center during the last and present evaluation periods."  (HS 946, DX 28.)

[4] Harrison Smith's deposition was taken over the course of five sittings; therefore, five volumes were created.  The volumes are consecutively paginated so only the page number will be referenced in citations to evidence herein.

request of former Chief Rick Greer and with Harrison Smith's agreement.  (Sutton Aff., ¶2.)

### The Promotion of Defendant Newsom to Chief

In the Summer of 2004, former Chief Greer announced his plans for retirement, effective in March of 2005.  (HS Dep. 1070, DX 320.)  The first step in the process of replacing Greer was the administration of written and oral exercises utilizing the services of the Ohio Association of Chiefs of Police, Inc's (OACP) Assessment Center on August 21, 2004.  (HS Dep. 1065, DX 323.)  The three candidates remaining thereafter completed personality assessments, interviewed one-on-one with Defendant Jack Sutton ("Sutton"), Director of the Park District, and submitted and presented written reports.  Sutton then numerically ranked the three candidates.  Harrison Smith ranked first on the OACP Assessment; Sgt. Grimm ranked first on the presentation of the written report; and Lt. Newsom ranked first on panel interviews, one-on-one interviews, and the content of the written report.  Sutton determined Newsom ranked highest overall.  (Sutton Aff, ¶3, DX 27.)

On October 28, 2004, Sutton announced the selection of Defendant Steve Newsom ("Newsom") to replace Greer, effective in March 2005.  (HS Dep. 1070, DX 320.)  Sutton alone made the decision to promote Newsom to Chief.  (Sutton Aff., ¶3.)  Harrison Smith did not register any complaint about the selection of Newsom as Chief.  She testified she was "never upset" about not being promoted to the position of Chief as she did not believe she "should" have gotten the position.  (HS Dep. 198:1-6.)

### The Promotion of Defendant Spreckelmeier to Assistant Chief

Subsequent to Newsom's promotion to Chief, Defendant Gary Hoffman ("Hoffman") announced he would be retiring from his position as Assistant Chief/Captain as of December 2005.   Newsom intended to promote two supervisors to the rank of Lieutenant with one to train with Hoffman until Hoffman's retirement at which time this supervisor would assume the position of Assistant Chief.

(Newsom Aff., ¶2, DX 51.)   On January 25, 2005, Newsom invited Harrison Smith, Spreckelmeier, and Smyth to select times to sit for panel interviews.  The interview panel consisted of Newsom, Tom Doyle, Chief of the Greenhills Police Department, and Lt. Norm Kandil.  (HS Dep. 1076, DX 13.)  Newsom requested each candidate complete a written report**.**  (Newsom Aff., ¶2, DX 51.)  Newsom subsequently held one-on-one interviews with Harrison Smith, Spreckelmeier, and Smyth.  (HS Dep. 1089, DX 15.)

On February 16, 2005, Newsom circulated a memorandum advising all Ranger Department personnel that Sgts. Spreckelmeier and Harrison Smith had been promoted to the rank of Lieutenant and that Spreckelmeier would advance to the rank of Assistant Chief upon the retirement of Hoffman. Additionally Rangers Cindy Williams and Bill Leaman were promoted to the rank of Sergeant.  (VC, ¶28; HS Dep. 1089, DX 18.)

Newsom did not select Harrison Smith as his second-in-command based upon his friendship with Harrison Smith and her husband, Greg Smith, and his belief this friendship did not allow him to view her objectively.  Newsom was also concerned about the influence Smith would have attempted to have on Newsom and the Ranger Department through Harrison Smith if she was in the position of Assistant Chief.  (Newsom Aff., ¶3.)

Newsom's fears were soon justified when he received an angry e-mail on February 18, 2005 from Greg Smith demanding Newsom justify his decision to promote Spreckelmeier and not Harrison Smith to Assistant Chief.  Smith believed Newsom should have awarded Harrison Smith the position based upon their friendship.  He stated: "You and I were friends for a long time, as was Kay.  I thought that counted for something, but I guess not.  You do not have to reply, but I think you owe me that.  I think I helped you get to where you are."  (Emphasis added.) (HS Dep. 626, DX 17.)  He did not argue Newsom's decision was based upon unlawful discrimination of any kind.  Harrison Smith and her

husband believed Smith was entitled to make such demands of Newsom because of his former position with the Ranger Department.  (HS Dep. 629.)

In March of 2005, Hoffman circulated two e-mails to all Rangers with the breakdown of responsibilities assigned to the Assistant Chief and the two Lieutenants, Harrison Smith and Kandil. (Hoffman Aff., ¶2.)  On September 14, 2005, Hoffman submitted a memorandum regarding Harrison Smith's performance through August 2005 in which he noted she had "successfully completed the probation period for her promotion to lieutenant."  (HS Dep. 948, Marked as DX 27; Hoffman Aff., ¶3.)

During the period between the announcement of the promotions on February 16, 2005 and November of 2005, Harrison Smith made no allegations of discrimination.  It was not until November of 2005, when it became clear Spreckelmeier would actually assume the position of Assistant Chief, that Harrison Smith confronted Newsom about his decision to promote Spreckelmeier and first threatened a lawsuit.  (HS Dep. 950.)  Harrison Smith testified these were empty threats, "[b]ecause originally I never had any intentions of filing a lawsuit against the park district.  I loved the park district.  I like the people I worked with." (HS Dep. 782:10-15.)  Although she testified she had no intention of filing a lawsuit, she caused Newsom to believe she had already done so with references to "pending litigation,"  (HS Dep., DX 55, p. 1), in a last ditch attempt to prevent Spreckelmeier from assuming the position of Assistant Chief.  Harrison Smith told Newsom she would not attend Spreckelmeier's promotion ceremony unless ordered to do so.  Newsom would not order her to do so.  (HS Dep. 953.)  She attended anyway.  (Newsom Aff., ¶4.)  This was the beginning of Harrison Smith's pattern of threatening other employees, both supervisory and non-supervisory, with grievances and lawsuits whenever she did not get her way.

Harrison Smith testified in deposition she made no claims of discrimination prior to November

of 2005, because she had hoped either her attempts to stir up rumors about Spreckelmeier or the possibility of his untimely death might prevent him from assuming the position.  (HS Dep. 201:8-203:11.)  The rumors regarding Spreckelmeier's "affairs," of which she has no first-hand knowledge, concerned events that allegedly happened before 2002 and "had been discussed for years."  (HS Dep. 204-206.)  However, it was not until after the announcement was made that Spreckelmeier would be the next Assistant Chief, and in spite of the fact she had no first-hand knowledge of the affairs, (HS Dep. 206:12-14),  that Harrison Smith decided it was necessary to discuss these rumors and to report the rumors of these "affairs" to Lt. Kandil.  (HS Dep. 211-212.)

Although she subsequently alleged before the OCRC that discrimination had been "perpetrated since [her] hire in 1984," (HS Dep. DX 83, p. 7), Harrison Smith did not make a claim of discrimination to any of her superiors at the Ranger Department until she threatened Newsom in November of 2005. She did not file a grievance over the alleged failures to promote her to the positions of Chief and Assistant Chief.  She did not even speak to an attorney until November of 2005.  (Harrison Smith Dep. 201:6-7.)  It was only when it became clear she would not obtain the promotion to Assistant Chief by means of stirring up old rumors about past indiscretions or as a result of Spreckelmeier's untimely death that Harrison Smith resorted to false threats she had filed a discrimination lawsuit, threats with which she admits she did not intend to follow through.

In spite of Harrison Smith's efforts to the contrary, Spreckelmeier assumed the position of Assistant Chief on November 16, 2005.  (VC, ¶31.)  Harrison Smith never filed a request for a workplace resolution regarding the promotion or her claims of sex discrimination in spite of the Park District's longstanding policy against discrimination of any type.  Instead, from that point on, Harrison Smith became a disgruntled employee.

## Hoffman's Performance Evaluations

Prior to Hoffman's retirement in December of 2005, Hoffman prepared evaluations of Harrison Smith for the year.  Hoffman prepared one evaluation for the period of March 2005, when she had assumed the position of Lieutenant, through May 31, 2005, and a second evaluation for the period of June through December 1, 2005.

In a meeting with Hoffman to discuss her evaluations, with respect to the first evaluation, Harrison Smith did not agree with Hoffman on her rating of 1 on "Quantity of Work."[5]  On the second evaluation, Hoffman had given Harrison Smith 2s in five of the eight categories and 1s in two categories. Hoffman had only positive comments regarding her efforts in "Leadership," "Fitness," "Work Quantity," "Dependability," "Communication/Professionalism," and "Initiative"; however, he gave her a 0 in the category of "Teamwork."  Nonetheless, her total point score after weighting qualified her for a merit premium.   Harrison Smith's total point score was not significantly different from prior evaluations she had received.

Harrison Smith objected to her rating of 0 in "Teamwork."  Harrison Smith had caused the other employees to believe a suit had been filed or would soon be filed.  Her coworkers' fear of being drawn

---

[5] As of December of 2005, supervisors of the Ranger Department were rated on a scale of 0 to 2 (0 "needs improvement," 1 "meets standards," and 2 "exceeds standards") in eight categories, including: Leadership, Fitness, Work Quantity, Dependability, Communication/Professionalism, Initiative, Teamwork, and Training/Staff Development.  Each category was weighted differently.  After an employee was rated in a category, the rating was multiplied by the weighted value for that category.  The eight weighted values were then added together to reach the total point score.  If an evaluation had been completed for the first half of the year, the two total point scores were added together to reach a total point score for the year. If no previous evaluation for the first half of the year had been completed, the total point score for the half for which the employee was evaluated was doubled to reach a total point score for the year.  (Newsom Aff., ¶5.)

into a lawsuit negatively affected their ability to work as a team.[6]  She then informed Hoffman that prior to meeting with him she had not intended to file a lawsuit, but she now intended to do so based upon her evaluations.  (Hoffman Aff., ¶4.)

On January 16, 2006, Harrison took her concerns regarding Hoffman's evaluations directly to Chief Newsom.  (HS Dep. 958, DX 55.)  Harrison Smith specifically requested "[t]hat the previous Performance Evaluation for the shortened period is discarded and that my score on my last evaluation is doubled and that score used toward my point accrual.  That any reference to a sexual discrimination lawsuit be removed from my evaluations."  (Id.)

Newsom eliminated the first evaluation noting Harrison Smith had been promoted and given a substantial raise during that period from $59,652 to $65,352.  (HS Dep., DX 58; Newsom Aff., ¶5.)  He revised the second evaluation to cover the period from March, in which she began in the position of Lieutenant, to December 1, 2005.  By agreement with Harrison Smith, Newsom increased her score on "Teamwork" to a 1.  (Id.)

After revising the evaluation and weighting and doubling of the total score for the evaluation, Harrison Smith received a total of 322 points on her Ranger Performance Evaluation.  (HS Dep. 61.)  This was the same total point score she had received from Hoffman on the first evaluation.

This total point score qualified Harrison Smith for a 1.25% merit premium.[7]  (HS Dep. 956, DX

_____

[6] In October of 2005, Harrison Smith had led her coworker, Lt. Kandil, to believe she had already filed a lawsuit.  She then swore him to secrecy.  He did not reveal her threats until after he learned she had made similar statements to Newsom in November of 2005.

[7] The merit premium schedule was circulated by Spreckelmeier on December 6, 2006 and provided as follows:

| 0-200 | NO MERIT | | PREMIUM RECOGNITION |
|---|---|---|---|
| 201-250 .5% | | $500 | |
| 251-300 1.0% MERIT | | $750 | |

34.)  Even if her teamwork score had been increased to 2, her total score would have been only 346, which would not have been sufficient to receive a 1.5% merit premium.  Harrison Smith received a merit premium higher than the average merit premium received by male supervisory employees in 2005.[8] Neither Harrison Smith's pay nor her professional opportunities were affected by Hoffman's evaluations. Based upon the revision of her evaluation, Harrison Smith agreed with Newsom that "all issues concerning lawsuits from the evaluation given to you by Capt. Hoffman on 12/13/05 are behind us and will not be used to evaluate you on future evaluations."  (HS Dep. 967, DX 59.)

## The "Computer Incident"

On May 2, 2006, Harrison Smith became enraged over the breakdown of her computer in her office and proceeded to walk screaming down the hallway repeatedly using the word "fuck"  ("Computer Incident").  A complaint regarding her behavior was made to Newsom by Brenda Campbell, the Administration Manager.  (HS Dep., DX 65.)  There is no evidence any of the Defendants knew about the Computer Incident prior to Campbell's complaint.  (HS Dep. 445.)

Newsom initiated an investigation.  Newsom requested Defendant Nancy Montague ("Montague"), the Deputy Director of the Park District, and Campbell's supervisor, to obtain statements from employees present in the area regarding the incident.  (Newsom Aff., ¶6.)

---

|  |  |
|---|---|
| 301-350 1.25% MERIT | $1,000 |
| 351-400 1.5% MERIT | $1,250 |

(HS Dep., DX 34.)

[8] In the Ranger Department, the average merit premium for female supervisory employees in 2005, which included Harrison Smith, was 1.25%.  The average for male supervisory employees was 1.19%.  Overall, the average merit premium for male and female employees in the Ranger Department was 1.2%.  There were female employees of the Ranger Department who received the top merit premium of 1.5% and male employees of the Ranger Department who received merit premiums below the 1.25% merit premium received by Harrison Smith. (Newsom Aff., ¶5.)

9

Spreckelmeier, Harrison Smith's immediate supervisor, had been on vacation on May 2, 2009. Upon his return,  Newsom informed Spreckelmeier of Brenda Campbell's complaint and requested Spreckelmeier obtain Harrison Smith's statement as to what had occurred.  (HS Dep. 387.)  Meanwhile, on May 6, 2006, Harrison Smith injured her knee in a fall at home.  Although scheduled to work, she was on medical leave on May 7 and 8, 2006 and returned on "light duty" on May 9, 2006.  (HS Dep. 439-440.)   This was the first day both Spreckelmeier and Harrison Smith were present in the Ranger Department for Spreckelmeier to request her statement.  (HS Dep. 440:21-24.)

Harrison Smith violated the chain of command and sent an e-mail to Chief Newsom advising him she would not give a statement to Spreckelmeier without first being given access to the statements provided by other employees.  (HS Dep. 295.)  Harrison Smith could testify to no situations she could remember wherein one witness was given the statements of other witnesses prior to giving their own. (HS Dep. 296:2-7.)  However, she testified she needed the other statements in order to figure out what she wanted to say had happened.  (HS Dep. 393:16-394:14.)

Newsom instructed Harrison Smith to follow the chain of command and the matter was to be handled through Spreckelmeier.  (HS Dep. 401.)  Harrison then attempted to sidestep the orders of her superiors by requesting the other statements be provided pursuant to a Public Records Request. (Newsom Aff., ¶7, DX 72.)  Spreckelmeier met once again with Harrison Smith and requested once again that she provide her statement.  After extensive objections and argument, Harrison Smith went to her office and returned with the written statement she had already prepared with the assistance of her husband.  (HS Dep. 405.)

Harrison Smith refused to admit to or take responsibility for her inappropriate language and behavior.  She denied using the word "fuck," contrary to numerous witness statements.  She claimed she

had said "fudge" and not "fuck,"  (HS Dep. 293:3-6),  contrary to all of the other witnesses, none of whom heard "fudge."  (Id., 425:2-3.)

On May 10, 2006, based upon her conduct in the Computer Incident, as well as during the investigation of the Computer Incident, Harrison Smith was disciplined.  Her lack of honesty resulted in an immediate suspension without pay for five days and demotion from the rank of Lieutenant to Ranger. Spreckelmeier found Harrison Smith "has little memory recall or is outright lying" and specifically required as a "standard" for her future performance that she "tell the truth."  (Spreckelmeier Aff., ¶1, DX 69.)  Harrison Smith was advised there had been other avenues of discipline with far more severe penalties than suspension and demotion discussed, including termination, based upon her dishonesty. She was retained because she was considered a valuable asset to the Ranger Department.  (Sutton Aff., ¶5.)  No male employee of the Ranger Department believed to have lied in an investigation has been given the lesser discipline given to Harrison Smith since the assumption of the positions of Chief and Assistant Chief by Newsom and Spreckelmeier.  (Newsom Aff., ¶19.)

### Referral to Dr. Cobb for a Fitness for Duty Evaluation

On May 12, 2006, Harrison Smith filed a request for a workplace resolution ("Computer Incident Workplace Resolution"), the grievance procedure utilized by the Park District, regarding the discipline received following the Computer Incident.

In direct response to Spreckelmeier's finding in her disciplinary action that "she has little memory recall or is outright lying," Harrison Smith attempted to manufacture an excuse to justify her behavior by asserting, for the first time, she had a "<u>diagnosed medical condition of perimenopause (symptoms of which may include </u>hot flashes, irritability, mood swings, sudden tears, depression, anxiety, feeling ill at ease,<u> feelings of dread, apprehension and doom</u>, difficulty concentrating,

11

disorientation, <u>mental confusion, disturbing memory lapses among others</u>) ....”  (Emphasis added.) (Newsom Aff., ¶8, DX 85.)

Based upon the fact Harrison Smith was a law enforcement officer whose duties required her to carry a gun, her statement she had a “diagnosed medical condition,” which had caused symptoms including “feelings of dread, apprehension and doom” was of concern to the Ranger Department.  To ensure the safety of the public, the Ranger Department referred Harrison Smith to Dr. Janet Cobb for a fitness for duty evaluation to determine how Harrison Smith’s “diagnosed medical condition” would affect her performance of her duties as a Ranger.  She was placed on paid administrative leave until completion of the evaluation.

On June 1, 2006, Dr. Cobb found Harrison Smith did not in fact suffer from the symptoms of perimenopause Harrison Smith had identified.  Dr. Cobb noted Harrison Smith’s gynecologist, Dr. Eva Ringgenberg, denied diagnosing Harrison Smith with any of the symptoms of perimenopause alleged by Harrison Smith.  Dr. Cobb cleared Harrison Smith for duty.  (Newsom Aff., ¶9., DX 126.)   It was Harrison Smith’s own attempt to provide an after-the-fact excuse for lying during the investigation of the Computer Incident that led to her referral for the fitness for duty examination by Dr. Cobb in which it was determined she had misrepresented having been diagnosed with any “medical condition.”

Harrison Smith pursued the Computer Incident Workplace Resolution along the steps proscribed by the policies of the Park District through Level 6 wherein Sutton ultimately decided the disciplinary action was appropriate.  Sutton based his determination on: 1) the deviation between Harrison Smith’s version of events and the version of numerous witnesses; 2) her false claims of having been “diagnosed” with symptoms of a medical condition responsible for her behavior; 3) her conduct at the Level 6 hearing in which she was aggressive toward the other employees who were testifying; and 4) her failure

to hold herself accountable for her own behavior.  (Sutton Aff., ¶4, DX 124)  Harrison Smith was

instructed to attend anger management counseling with Concern because of her conduct at the hearing

and the evidence elicited therein.[9]

On May 16, 2006, Harrison Smith filed a Charge of Discrimination, (hereinafter "Charge 1"),

with the Ohio Civil Rights Commission ("OCRC"), against only Respondent Hamilton County Park

District.  (HS Dep. 531, DX 83.)  In Charge 1, Harrison Smith checked only the boxes asserting sex

discrimination and retaliation.  In the EEOC Dual Filing Notice, she checked only the box marked Title

VII, and not the boxes marked ADEA and ADA, to identify the federal statutes under which the Charge

was being filed.  (Id, p. 3.)  Harrison Smith alleged for the first time the decision not to promote her to

Chief had been discrimination based upon her sex although this decision had been announced over a year

and a half earlier on October 28, 2004,  (HS Dep., DX 320), and she did not believe she should have

gotten the position. (HS Dep. 198:1-6.)

She also alleged the decision not to promote her to Assistant Chief was "in retaliation for

pursuing my civil rights in employment."  Finally, Harrison Smith alleged retaliation in the performance

evaluations prepared by Hoffman prior to his retirement, as well as the demotion on May 10, 2006

following the "Computer Incident."  (Id., p. 7.)

Upon her return from suspension on May 18, 2009, Harrison Smith was to continue on "light

duty" assignment based upon restrictions following her knee injury on May 6, 2006.  Spreckelmeier gave

Harrison Smith the choice of two "light duty" assignments: an eight-hour shift answering phones at the

dispatch office from Monday through Friday or a ten-hour shift assisting with the sale of motor vehicle

_____

[9] Harrison Smith herself had sought a referral for anger management in her request for a
workplace resolution.  (Newsom Aff., ¶8.)  Additionally, her expert, Dr. Manges, opined she was
in need of anger management.  (Manges Dep. 70.)

passes at Shawnee Lookout from Monday through Thursday.  Harrison Smith chose the ten-hour shift

assisting with motor vehicle pass sales.  Spreckelmeier advised Harrison Smith this assignment would

continue until her doctor's restrictions expired. (HS Dep. 757, DX 87.)  Although this was a

Technician's position, Harrison Smith continued to be paid at her Ranger rate of pay.  (HS Dep. 785:

16.)

## **MDC Workplace Resolution**

On June 22 and 23, 2005, Harrison Smith, as well as other Ranger Department employees,

attended  Mobile Data Computer ("MDC") training.  Prior to the training, Harrison Smith's supervisor,

Sergeant Mark Brooksbank, had advised Harrison Smith that Rangers would receive only eight hours of

pay per day for attending eight hours of training per day in spite of the fact they had received ten hours

of pay in the past.  (HS Dep. 167:1-3, 23-24; Brooksbank Aff., ¶1.) On July 1, 2006, Harrison Smith was

advised her time card had been changed to reduce the number of hours she would be paid for attending

MDC training from ten hours per day to eight hours per day for each of the two days to reflect the actual

amount of time spent in training.  (Spreckelmeier Aff., ¶2, DX 133.)  Spreckelmeier required all Rangers

who attended the same MDC training as Harrison Smith be treated the same and similarly changed the

time cards of other Rangers to reflect eight hours of pay per day of training.  (Spreckelmeier Aff., ¶2,

DX 133.)

On July 3, 2006, Harrison Smith filed a request for a workplace resolution ("MDC Workplace

Resolution") complaining her timecard had been improperly changed.   Harrison Smith did not take the

MDC Workplace Resolution beyond Level 1.  (HS Dep. 1061.)  However, she told Brooksbank in an

angry telephone conversation that she had previously had no intention of filing a lawsuit, but now she

was going to file a lawsuit over the change to her time card, as well as she was going to file grievances in

two unrelated matters.  She then gave the phone to her husband who told Brooksbank that "Spreckelmeier was going to pay big some day."  (Brooksbank Aff, ¶3, DX 132.)[10]

### Woodland Mound Park Assignment

On June 30, 2006, in violation of the chain of command, Harrison Smith sent an e-mail to Chief Newsom requesting the assignment she would be given upon her "anticipated" return to full duty following her knew injury in May.  She had not received authorization from her doctor to return to full duty and she did not foresee receiving such authorization before August 10, 2006.  (HS Dep., DX 142, p. 2.)  Spreckelmeier responded to Harrison Smith, advising her upon her expected return to full duty on August 10, 2006, she would "be temporarily assigned to Woodland Mound to cover the shifts which were created by the vacancy of having Ranger McDonough assist with accreditation.  You will be informed of your permanent assignment when a determination has been made regarding the current open position within the department."  (Id.)  Harrison Smith acknowledges, as of July 11, 2006, when Spreckelmeier advised Harrison Smith she would be assigned to Woodland Mound Park if she returned to full duty on August 10, 2006, this was the only open full duty position.  (HS Dep. 814.)

On August 2, 2006, and without medical authorization to return to full duty or any guarantee as to when that might occur, Harrison Smith appealed Spreckelmeier's decision to the next level.  ("Woodland Mound Park Workplace Resolution") (HS Dep. DX 142, p. 1.)  In her Level 2 appeal to Newsom, Harrison Smith argued she should have been assigned to her "home district" or have been given a "rotating district schedule."  (Id., DX 143.)  However, no such "home districts" or "rotating district schedules" existed.  Rangers were assigned based upon open positions.  Policy 41.1.2, in effect

---

[10] Several weeks earlier she had told Brooksbank "all she had was female card and she was going to play it."  (Brooksbank Aff., ¶2, DX 125.)

since April 2001, provided a Ranger could request a transfer to an open position when a vacancy became available.  (Newsom Aff., ¶10, DX 157.)  Harrison Smith considered the West District to be her "home district" as it was the most convenient for her; however, she had not been assigned to the West District since 2002, prior to her promotion to Sergeant.  (HS Dep. 811-812.)

Newsom concluded the assignment to Woodland Mound Park was appropriate and noted, "[i]n order to assign Ranger Harrison to any other district than the South would require another full time officer to move from their assigned district.  To my knowledge this has never occurred." (Newsom Aff., ¶11, DX 152.)

It was not until she was frustrated in her efforts to avoid assignment to Woodland Mound Park that Harrison Smith began to object to the "light duty" assignment assisting with motor vehicle pass sales, which she had chosen and had been performing since May 18, 2006.  Harrison Smith argued her talents would be more effectively utilized spending her "light duty"performing accreditation; however, this position was already filled by another female, Sheli McDonough.  Harrison Smith believed she should be allowed to bump McDonough to McDonough's previous assignment at Woodland Mound Park so Harrison Smith could perform accreditation.  (HS Dep. 141-143.)  There was, however, no policy for such bumping.

Having failed to avoid assignment to Woodland Mound Park, Harrison Smith attempted to raise other roadblocks to prevent performing her duties there.  On August 9, 2006, Harrison Smith requested changes to the schedule she would work upon her expected return on August 10, 2006 to full duty.  Spreckelmeier agreed to the changes she requested.  On August 10, 2006, Harrison Smith then advised Spreckelmeier she would not be released by her doctor to return to fully duty that day after all.  (HS Dep., DX 145.)

On August 27, 2006, in an e-mail to her supervisor, Sgt. Leaman, Harrison Smith objected to beginning her assignment to Woodland Mound Park on the new date of September 7, 2006 with a night shift.  She also advised him she could not be at work on time because of her son's football game.  (HS Dep., DX 155.)  Sgt. Leaman made all of the changes requested by Harrison Smith to meet her personal needs.  (HS Dep. 864.)

On September 7, 2006, Harrison Smith reported to Woodland Mound Park for full duty as a Ranger for the first time in the four months since her knee injury in May.  (HS Dep. 827:1-7.)  On September 14, 2006, she fell over a concrete paver while checking the concession building at Breezy Point Pavilion.  (HS Dep. 899-900.)  Harrison Smith notified her supervisor, Sgt. Greg Grimm, she had fallen.  He advised her to go to Mercy Anderson Hospital if she was capable of doing so.  (HS Dep. 900-901; Grimm Aff., ¶1, DX 170.)  Grimm met her at the ER.  (Id., 902.)

After her exam, the doctor then asked Harrison Smith if she needed a note for work.  (HS Dep. 905:17-21.)  Before Harrison Smith gave her answer, Grim walked away from the conversation between Harrison Smith and the doctor to take a call on his Nextel.  (HS Dep. 907; Grimm Aff., ¶1.)  Grimm offered to drive her home or to call her husband.  Harrison Smith refused. (HS Dep. 909-910.)

Harrison Smith was on leave until September 20, 2006 when she returned to a "light duty" assignment working with the volunteers' program.  (HS Dep. 978, DX 161, p. 7.)  Although Harrison Smith had no idea how long she would be on "light duty,"  (HS Dep. 979), she objected to this assignment complaining it was outside her Department.  She requested assignment to the Riding Center. The Riding Center is also outside the Ranger Department.  (HS Dep. 982:5-7.) Spreckelmeier agreed to Harrison Smith's request and arranged for Harrison Smith to work at the Riding Center.  (HS Dep. 984, DX 176.)

17

**Dispute Over Scheduling With Cindy Williams**

On September 21, 2006, prior to being released back to full duty following injuring herself at Woodland Mound Park, Harrison Smith sent a request to the scheduler, her "good friend" Cindy Williams. (HS Dep. 976, DX 173.) Williams advised Harrison Smith the schedule had been posted for October 5 through November 1, 2006 as of September 18, 2006.  (HS Dep., DX 180, p. 3.)  Since neither Williams nor Harrison Smith had any certain idea when Harrison Smith would return to full duty at that time, Williams put Harrison Smith in an open shift.  Williams noted "a lot of rangers are involved" and this was the only "fair" thing to do.  Harrison Smith responded she was not happy with this assignment. (Id., p. 2.)

Harrison Smith demanded Williams bump another employee already scheduled so Harrison Smith could take <u>his</u> shifts.  Williams refused.  (Id.)  In spite of the fact none of the Defendants were aware of Williams' attempts to schedule Harrison Smith, she told Williams she was being "treated disparately." (Id.)

Harrison Smith's husband then called Williams in an attempt to bully her into meeting Harrison Smith's demands.  (HS Dep. 1034; Spreckelmeier Aff., ¶3, DX 201.)  Smith asked Williams how she could be such a "horrible friend."  (Id.)  Harrison Smith believed it was acceptable for her husband to take such actions "particularly since my husband is a retired lieutenant from the park district.  So, it's a different situation.  It's not just a spouse that's from somewhere else."  (HS Dep. 1036:9-13.)  Harrison Smith threatened Williams with requesting a workplace resolution if she did not get her way, but Harrison Smith did not pursue it.  (HS Dep. 160.)

**The "Looker Incident"**

As set forth above, on September 14, 2006, Harrison Smith fell at Woodland Mound Park and

remained off duty until September 20, 2006.  The sick leave policy in effect at the time provided:

> Employees are permitted a total of three incidents of up to a maximum of five scheduled shifts (days) of sick leave per fiscal year without a doctor's excuse.  This does not include ... any time off where there is a doctor's excuse.  Once an employee has taken the maximum of five scheduled shifts, they must automatically bring in a doctor's excuse.  A doctor's excuse must be signed, dated and confirm the medical visit or state the employee was unable to perform their job duties for a specific period of time.  Failure to bring in a doctor's excuse will result in appropriate disciplinary action.

(Newsom Aff., ¶12, DX 174.)  On September 18, 2006, five days after her fall, Matt Looker, the Park District's Risk Manager, contacted Harrison Smith to find out "the status of her work ability."  He asked if Mercy Anderson Hospital had given her a note for work.  Harrison Smith told Looker she was not given a note.  Looker told her he would wait to hear back from her once she had scheduled an appointment with Beacon Orthopedic.  (Newsom Aff., ¶13, DX 167.)

Harrison Smith called Looker back later that day.  Looker offered to find her a "light duty" assignment for September 19, 2006 so she would not have to use a sick day.  Harrison Smith refused the offer becoming hostile and arguing Looker was requiring her to work patrol.  He explained he was not suggesting she work patrol, but rather that she work a "light duty" assignment so she would not have to take sick leave.  Harrison Smith became very upset and combative claiming the Park District wanted her to work patrol while she was hurt.  Looker explained once again he was offering "light duty" and "it was up to her and her doctor if she wanted it." (Id.)

Harrison called Looker for a third conversation to ask if she was being required to work on September 19, 2006.  He told her it was her decision.  He advised her again that he needed a return to work statement from Beacon Orthopedic.  She responded incongruently that Mercy Hospital "does not complete return to work statements."  She then hung up on him.  (Id., p. 2.)  Once again, she had lied.

19

Looker filed a complaint in response to Harrison Smith's behavior.  Upon receiving the complaint, Spreckelmeier requested Sgt. Leaman and Lt. Kandil investigate.  On September 21, 2006, Leaman interviewed Harrison Smith.  She denied being combative, insisting "this was harassment on the part of Matt."  She claimed she had a witness, but would not identify the witness.  (Spreckelmeier Aff., ¶4, DX 179.)

On September 22, 2006, Leaman and Kandil interviewed Harrison Smith for the purpose of obtaining information regarding the witness she had referenced.  She refused to provide the name. (Id.)

On October 3, 2006, Leaman notified Chief Newsom that Leaman and Kandil had completed their investigation with a counseling meeting wherein they advised Harrison Smith "she needs to improve her working relationship with fellow employees.  It was mentioned to Kay that in addition to her encounter with Matt Looker, we had witnessed another occasion in which she had been difficult with Sergeant Williams while addressing her upcoming scheduled."  (Newsom Aff., ¶14, DX 192.)  They gave Harrison Smith a Performance Advisory Form noting she "was asked to improve her working relationship with fellow employees."  No discipline resulted from the incident.  (Newsom Aff., ¶15, DX 183.)  During this meeting, Harrison Smith twice alleged "she was being attacked" by Looker and threatened to file a complaint against him. (Newsom Aff., ¶14, DX 192.)

Also during the meeting, Harrison Smith's behavior became hysterical.  She repeatedly ran crying and screaming between the interview room and the lobby so she could confer with her husband who stood pounding on the Dispatch window and yelling.  (Spreckelmeier Aff., ¶6, DX 190.)  The employees who witnessed the behavior of Harrison Smith and her husband were shocked.  As a result of his outburst and behavior, the Park District initiated security improvements within the Winton Centre. (Sutton Aff., ¶6.)

20

Kandil subsequently went to speak with Harrison Smith at the Riding Center.  At that time, Harrison Smith told Kandil she had only managed to make it through the meeting with Kandil and Leaman because her husband had been at the Winton Centre during the meeting and "Greg terrifies people through intimidation ...  he uses intimidation to get what he wants from people."  She then told Kandil she was going to sue Looker "through the Ohio Civil Rights Commission."  (Spreckelmeier Aff., ¶5, DX 195.)

Following her allegation in her meeting with Kandil and Leaman that she had been "attacked" by Looker, Sutton instructed Kandil and Sgt. Smyth to investigate.  They attempted to interview Harrison Smith.  They requested she provide a written statement detailing what had been said and done by Looker to make her feel she had been "attacked."  Harrison Smith claimed she was too "stressed" to provide a complete statement regarding the "two reported attacks" as she was barely able to write her name.  She was not sure she would be able to make it through her shift.  Harrison Smith threatened to file a complaint.  (Sutton Aff., ¶7.)

### Referral to Dr. Daum

From May of 2006 forward, Harrison Smith's behavior deteriorated at a rapid rate reaching a low during the investigation of her allegations she had been "attacked."  Harrison Smith would become extremely emotional when dealing with other employees, alternating between crying and screaming.  She was unable to make a decision without obtaining her husband's input.  She made other employees uncomfortable with her hostile demeanor, constant threats of filing grievances or lawsuits against them, threats of spilling the "dirt" on everyone, and habitually tape recording their conversations. Spreckelmeier contacted Dr. James Daum, a police psychologist, to obtain his expert advice.  Dr. Daum advised Spreckelmeier that Harrison Smith should be evaluated and provided Spreckelmeier with a

checklist of thirty-one "areas of concern."  Harrison Smith exhibited 17 of the 31 behaviors.

Spreckelmeier referred Harrison Smith to Dr. Daum for a fitness for duty evaluation.  (Spreckelmeier

Aff., ¶7; HS Dep., DX 6, pp. 6-8.)

On October 9, 2006, Harrison Smith was placed on paid administrative leave pending the

outcome of the evaluation.  (HS Dep. 31.)  On October 11, 2006, Dr. Daum met with Harrison Smith.

On November 6, 2006, Dr. Daum determined Harrison Smith was psychologically unfit for duty.  (HS

Dep., DX 6.)

That same day, Harrison Smith was notified of the determination and that her paid leave would

be continued for sixty days while she evaluated her options, "including but not limited to applying for

retirement, applying for disability retirement based on Dr. Daum's evaluation, or resignation."  (Sutton

Aff., ¶8, DX 216.)

On November 15, 2006, Harrison Smith filed a request for a workplace resolution ("Daum

Workplace Resolution ") objecting to Dr. Daum's determination.  On December 14, 2006, Sutton

determined, based upon Dr. Daum's report, Harrison Smith could not return to a position as a Ranger.

Harrison Smith was notified she could challenge Dr. Daum's determination if she so wished by

obtaining her own psychological evaluation.  She requested and the Park District agreed to an extension

of time beyond the 60 days provided in Newsom's letter to obtain her own psychological evaluation.

(Sutton Aff., ¶8, DX 298.)  Although her testimony reveals she was evaluated by her own evaluator, Dr.

Kenneth Manges, in January and February of 2007, Harrison Smith did not request Dr. Manges generate

a report until August 15, 2007.  Even after he had generated a report, Harrison Smith refused to provide

it to the Park District.  (HS Dep. 27, DX 5, pp. 9-17.)

On December 19, 2006, Harrison Smith filed a Charge, (hereinafter "Charge 2"), with the OCRC

against only Respondent Hamilton County Park District.  (HS Dep. 556, DX 89, p. 1.)  Harrison Smith

again checked only the boxes asserting sex discrimination and retaliation.

In his evaluation generated August 15, 2007, Dr. Manges did not address Dr. Daum's finding

Harrison Smith "failed to demonstrate that she possesses the ethical judgment required for competent

performance as a law enforcement officer."   In deposition testimony, Dr. Manges agreed the results of

the tests he administered paralleled the results of the tests administered by Dr. Daum.  (Manges Dep.

57.)

Dr. Manges' report was forwarded by the Park District's counsel to Dr. Daum who issued a

supplemental report confirming his initial determination that Harrison Smith was unfit for duty as a

Ranger.  Dr. Daum noted: "I would agree with Dr. Manges that, based upon Ms. Harrison-Smith's

presentation in October of last year, she does not present a threat of physical violence.  However, I

maintain that the other aforementioned issues render her not psychologically fit."  (HS Dep., DX 6, pp.

6-7.)

### Termination

On August 31, 2007, based upon Dr. Daum's opinion, the Park District terminated Harrison

Smith.  (HS Dep., Ex. 359.)  In the letter of termination, Newsom invited Harrison Smith to apply for

other positions for which she was qualified.  (Newsom Aff., ¶16, DX 289.)  Harrison Smith did not

apply for any other positions with the Park District.  On September 11, 2007, Harrison Smith filed a

request for a workplace resolution ("Termination Workplace Resolution") in response to her termination.

(HS Dep., DX 360.)  On September 19, 2007, after the Termination Workplace Resolution had

progressed to the final step, Sutton denied Harrison Smith's request for reinstatement.  (Sutton Aff., ¶8,

DX 298.)

On September 18, 2007, Harrison Smith filed a Charge, ( "Charge 3"), with the OCRC against only Respondent Hamilton County Park District.  (HS Dep. 577, DX 297, p. 2.)  Again, Harrison Smith checked only the boxes asserting sex discrimination and retaliation.

On January 23, 2008, Harrison Smith filed this action asserting federal and state claims for sex, age, and disability discrimination and retaliation, a hostile work environment based upon sex, and state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, and spoliation.  (VC.)

## II.     LAW AND ARGUMENT

### A.     SUMMARY JUDGMENT STANDARD

"The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case."  Thompson v. Potter, 2006 WL 783395 (S.D. Ohio, E.D. 2006).  "The moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only show-that is, point out to the district court-that there is an absence of evidence to support the nonmoving party's case.  The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case."  Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996) (internal citations omitted).

### B.     THE PARK DISTRICT IS ENTITLED TO SUMMARY JUDGMENT AS TO HARRISON SMITH'S CLAIMS OF SEX DISCRIMINATION AND RETALIATION.

In her Verified Complaint, Harrison Smith alleges various "adverse employment actions" beginning with the failure of the Park District to promote her to the position of Chief on October 28, 2004, and to the position of Assistant Chief on February 16, 2005.  Defendants will address each of the alleged "adverse employment actions" in terms of Harrison Smith's various claims; however, the failures

to promote her to Chief and Assistant Chief cannot be the basis for any of her federal claims as Harrison Smith failed to file a charge with the EEOC or the OCRC within the statutorily mandated limitations period.

### 1.    Harrison Smith's Failure to Promote Claims Are Barred By Her Failure to File a Charge Within  the Statutorily Mandated Limitations Period .

In her Verified Complaint, Harrison Smith acknowledges the decision to promote Spreckelmeier to Assistant Chief was announced on February 16, 2005. (VC, ¶28.)  However, she did not file Charge 1, in which she first alleged the decision not to promote her to Assistant Chief was discriminatory, until May 16, 2006, some 450 days later, in spite of having spoken with an attorney in November of 2005. (Harrison Smith Dep. 201:6.)[11]

When an alleged unlawful employment practice occurs in Ohio, a deferral state, a claimant has 300 days to file a charge with the EEOC under Title VII .  Amini v. Oberlin College, 259 F.3d 493, 498 (6th Cir. 2001).  The 300 days runs from the date on which the alleged discriminatory act is communicated to the plaintiff.  Id. at 499.  In Amini, the limitations period began when the plaintiff received a letter from his employer informing him "he had not been hired" and not on the date the individual who had been hired began his employment.  Id. at 501.  In Black v. Columbus Public Schools, 211 F.Supp.2d 975, 980 (S.D. Ohio, E.D. 2002), aff'd in part, vacated in part, 79 Fed. Appx. 735, 2003 WL 22114027*2 (6th Cir. 2003), the limitations period for filing a charge began to run on the date the plaintiff, an assistant principal, received notice in the spring of 1992 of her transfer to another school for the next school year and not in August or September of 1992 when the transfer actually occurred.

---

[11] The decision to promote Newsom to Chief was announced on October 28, 2004, and is, to an even greater extent, barred by Harrison Smith's failure to file a charge until May 16, 2006.

As there is no evidence of any assertions of sex discrimination by Harrison Smith prior to the announcement of the decision to promote Newsom to Chief on October 28, 2004 or the decision to promote Spreckelmeier to Assistant Chief on February 18, 2005, Harrison Smith has no basis for any claim the failure to promote her to these positions was in retaliation for protected conduct. Harrison Smith's "failure to promote" claims are barred by her failure to file a charge within the applicable limitations period of 300 days.

### 2.   Harrison Smith Cannot Establish the Essential Elements of Her Claim for Disparate Treatment Based on Sex Under Title VII or O.R.C. §4112.

Harrison Smith's sex discrimination claim appears to be one for disparate treatment, as do her claims for disability and age discrimination. Harrison Smith includes language in her Title VII claims at Counts I and VII apparently alleging disparate treatment on the basis of "race," (VC ¶115), and "national origin," (VC, ¶145); however, she can neither allege nor prove facts to support such claims, particularly in light of the evidence Harrison Smith is a Caucasian American.

A plaintiff can establish a *prima facie* case of discrimination under the direct or circumstantial methods of proof. White v. Columbus Metropolitan Housing Authority, 429 F.3d 232, 238 (6th Cir. 2005). Harrison Smith can not succeed under either method.

### a)   Harrison Smith cannot establish her *prima facie* case of sex discrimination with direct evidence.

Direct evidence is evidence that would prove the existence of a fact without any inferences or presumptions. Taylor v. H.B. Fuller Company, 2008 WL 4647690*7 (S.D. Ohio, W.D. 2008). In Taylor, this Court specifically held "[d]irect evidence of discrimination occurs when either the decision-maker or an employee who influenced the decision-maker made discriminatory comments related to the employment action in question." Id. "This essentially requires an admission by the decision-maker that

his actions were based on the prohibited animus." <u>Thompson</u>, 2006 WL 783395 at *16.   "Direct

evidence generally requires unmistakable verbal assertions that the employee was treated adversely

because of ... [the protected trait]." <u>Wofford v. Middletown Tube Works, Inc.</u>, 67 Fed. Appx. 312, 315

(6th Cir. 2005).   None of the statements identified by Harrison Smith meet this standard for direct

evidence as a method of proof of sex discrimination.

In her Verified Complaint, Harrison Smith alleges a non-defendant, the <u>former</u> Chief, "used

offensive comments to the female Riding Center Manager.   Namely, he made the following statements

'girl where are your evaluations?' and 'girl, you got that computer grinding?'" (VC, ¶106.)   The

statements of the former Chief were made to someone other than Harrison Smith and pertained in no

way to Harrison Smith or to any employment action involving Harrison Smith of which she complains in

this action.   Further, they were made by an individual who had retired as of the time of the employment

actions alleged by Harrison Smith to have been discriminatory.   There is no "link or nexus between the

remarks" referenced by Harrison Smith and any employment actions to which she objects as the remarks

were remote and directed to another individual in a position different from that of Harrison Smith.

Harrison Smith next alleges during the "interview process for the Assistant Chief

position...Newsom called Plaintiff the leader of a group called the 'femos' and accused her of using the

'female card' to get the promotional position."  (VC, ¶26.)   First, even accepting this allegation as true,

the term "femos" was coined and promoted by Harrison Smith herself.  (Joyce Stapleton Dep. 26.)

Harrison Smith circulated e-mails to members of the "femos" arranging meetings wherein they would

roast the male employees, which Harrison Smith named the "menos."  (Stapleton Dep. 68-71.)  "Femos"

was Harrison Smith's name for "a group of people who got together."  (HS Dep. 73:14-15.)  Like the

plaintiff in <u>Crawford v. Medina General Hospital</u>, 96 F.3d 830, 835 (6th Cir. 1996), who insisted on

separating the workforce into age categories, it was Harrison Smith who split the Ranger Department into "femos" and "menos."  She now concludes, without support, the use of her description by others was sex discrimination.  Second, this statement reveals no objection to Harrison Smith's sex, but to her attempt to use her sex to obtain better treatment than similarly situated male employees. To find sex discrimination, one would need to infer Newsom did not promote Harrison Smith because she was a woman.  "The need to draw such inferences prevents these remarks from constituting direct evidence." Johnson v. The Kroger Company, 319 F.3d 858, 865 (6th Cir. 2003).  Harrison Smith can not, therefore, establish her *prima facie* case under the direct method.

### b)   Harrison Smith cannot establish her *prima facie* case of sex discrimination with indirect evidence.

In order to establish her *prima facie* case of sex discrimination in the absence of direct evidence, Harrison Smith must establish: 1) she is a member of a protected class; 2) she was qualified; 3) an adverse employment action; and 4) she was replaced by an individual outside of the protected class or a similarly situated individual outside the protected class was treated less harshly for similar conduct. Peltier v. United States of America, 388 F.3d 984, 987 (6th Cir. 2004).  Harrison Smith cannot establish the actions taken by the Park District to which she objects, other than the suspension/demotion and termination, qualify as "adverse employment actions."  Further, she cannot establish she was replaced or treated more harshly than similarly situated male employees with respect to any of the alleged "adverse employment actions."

A "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.  A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."  Grosjean v. First Energy Corp., 349 F.3d 332, 336 (6th Cir. 2003).

"Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement." Lilley v. BTM Corp., 958 F.2d 746, 752 (6th Cir. 1992).

Once it became apparent to Harrison Smith that neither her attempts to stir things up nor Spreckelmeier's untimely death were going to prevent him from assuming the position of Assistant Chief, Harrison Smith took every opportunity to make known her displeasure with the Department and her superiors.  She became a disgruntled employee for whom every employment decision was a personal affront. However, the majority of these employment decisions do not qualify as "adverse employment actions" on which she might base a discrimination claim.  Those that would qualify do not support such a claim as there is no evidence they reflect treatment of Harrison Smith that was more harsh than the treatment of similarly situated male employees.

An "adverse employment action" as defined in the context of a Title VII discrimination claim requires a "materially adverse change in the terms or conditions of employment because of the employer's actions." Michael v. Caterpillar Financial Services Corporation, 496 F.3d 584, 593 (6th Cir. 2007).   The majority of the Park District's actions identified by Harrison Smith in her Charges and Verified Complaint do not constitute "adverse employment actions" as they did not affect the "terms or conditions" of Harrison Smith's employment.  The Sixth Circuit "has consistently ruled that de minimus employment actions are not materially adverse and, thus, not actionable." Nickell v. Memphis Light, Gas & Water Division, 76 Fed. Appx. 87, 93, 2003 WL 22205073 *5 (6th Cir. 2003).  "A material adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Id.

"In the disciplinary context, the Sixth Circuit has held that to be found similarly situated, the

plaintiff and [her] proposed comparator must have engaged in acts of comparable seriousness. ... To make this assessment, a court must look to certain factors, such as whether the individuals have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  (Internal citations omitted.)  Ford v. Hamilton County Juvenile Court, 2007 WL 2302816 *6-7 (S.D. Ohio, W.D. 2007).

In Charges filed with the OCRC, Harrison Smith asserted the following decisions as "adverse employment actions":

1) the denial of the promotions to the positions of Chief and Assistant Chief, (Charge 1, DX 83);

2) "a low evaluation from Captain Hoffman," (Charge 1, DX 83);

3) her suspension and demotion following the "Computer Incident", (Charge 1, DX 83) ;

4) "unfavorable work assignments, unfavorable shift assignments, been denied access to procedures afforded to other park district employees, denied due process, lied to in investigations, been the subject of a false complaint, been made to undergo two fitness for duty evaluations ..." (Charge 2, DX 89);

5) the refusal to provide her with "requested training," "body armor," and to allow her "to complete [her] annual firearms qualification" (Charge 2, DX 89); and

6) her termination (Charge 3, DX 297).

In her Verified Complaint, she alleged these additional "adverse employment actions":

1) violations of Ranger Directives (VC, ¶96), and

2) inappropriate personal relationships.  (VC, ¶97).

In deposition, Harrison Smith repeated this list when asked to identify the adverse employment actions

of which she was complaining.  (HS Dep. 529-531.)  In addition to Harrison Smith's inability to establish the majority of these employment actions qualify as "adverse employment actions," she cannot establish similarly situated male employees were treated better.

Each of the alleged adverse employment actions asserted either in Charges filed with the OCRC or the Verified Complaint is addressed in detail in Section II.B.1.b.1 through 13 of the Memorandum in support of the Motion for Summary Judgment filed by the individual Defendants.  The Park District will, in summary fashion, paraphrase the detailed arguments and supporting case law set forth in the individual Defendants' supporting Memorandum with respect to each of these alleged adverse employment actions.  The arguments and/or caselaw contained in the individual Defendants' supporting Memorandum is incorporated by reference herein.

### 1)  Failure to promote.

Harrison Smith cannot base any claim of discrimination on the failure to promote her to Assistant Chief as her Charge asserting this claim was filed out of time.  Her claim of discrimination based upon the failure to promote her to Chief is similarly time-barred.  Additionally, it must be rejected based upon Harrison Smith's own testimony she was "never upset" about not receiving this promotion as she did not believe she "should" have gotten it.  (Harrison Smith Dep. 198:1-6.)  Even if she had filed Charge 1 in a timely manner, Harrison Smith could not prevail on her claim for failure to promote as she cannot establish the essential elements of such a claim. White, 429 F.3d at 240; Brewer v. Cedar Lake Lodge, Inc., 243 Fed. Appx. 980, 988 fn6 (6th Cir. 2007). Harrison Smith cannot succeed as her claim is based solely on her subjective belief she was the "only qualified and eligible individual for the promotion." Hedrick v. Western Reserve Care System, 355 F.3d 444, 462 (6th Cir. 2004); Browning v. Dept. of the Army, 436 F.3d 692, 697-98 (6th Cir. 2006); Hartsel, 87 F.3d at 803-804.

31

### 2)      Low evaluation.

Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999); Nickell, 76 Fed. Appx. at 93, 2003 WL 22205073; Vaughn v. Louisville Water Co., 302 Fed. Appx. 337, 348 (6th Cir. 2008).

### 3)      Suspension and demotion.

Harrison Smith's own testimony reveals none of the incidents she identifies support her claim similarly situated male employees were treated less harshly for conduct of "comparable seriousness."  Harrison Smith's "subjective belief that these acts amounted to more serious misconduct than the acts she committed" is insufficient to establish their conduct was of "comparable seriousness." Ford v. Hamilton County Juvenile Court, 2007 WL 2302816*7 (S.D. Ohio, W.D. 2007); Hollins, 188 F.3d at 660; Wofford, 67 Fed. Appx. at 316.

### 4)      Unfavorable work assignments.

Kinamore v. EPB Electric Utility, 92 Fed. Appx. 197, 202-203 (6th Cir. 2004); Yates v. Avco Corp., 819 F.2d 630, 638 (6th Cir. 2004); Momah v. Dominguez, 239 Fed. Appx. 114, 123-24 (6th Cir. 2007); White v. Burlington Northern & Santa Fe Railway Co., 364 F.3d 789, 803-04 (6th Cir. 2005); Barrett v. Lucent Technologies, Inc., 36 Fed. Appx. 835, 842 (6th Cir. 2002).

### 5)      Denial of due process or process afforded other employees.

### 6)      Fitness for duty evaluations.

### 7)      Training.

### 8)      Requests for shorts and body armor.

Michael, 496 F.3d at 594.

### 9)      Surrender of gun, badge, and keys during suspension.

Adair v. Charter County of Wayne, 452 F.3d 482, 490 (6th Cir. 2006); Michael, 496 F.3d at 594.

**10)     Termination.**

As a result of finding of Dr. Daum, Harrison Smith was terminated because she was psychologically unfit for duty.  SERB v. City of Cortland, 8 Ohio Pub. Employee Rep. ¶1622; Madison Township Board of Trustees v. Donohoo, 1994 WL 692929*6 (Ohio App. 2nd Dist. Oct. 12, 1994); Launius v. Board of Fire and Police Com'rs of City of Des Plaines, 151 Ill.2d 419, 436 (Illinois 1992).

**11)     Violation of Ranger Directives.**

**12)     Inappropriate personal relationships.**

**13)     Increased workload.**

As Harrison Smith cannot establish the essential elements of her claim for sex discrimination under Title VII, the Park District is entitled to summary judgment as to this claim.  Further, federal case law interpreting Title VII is generally applicable to cases involving alleged violations of O.R.C.; therefore, because Harrison Smith's discrimination claim under Ohio law is subject to the same analysis, the Park District is entitled to summary judgment as to her state law sex discrimination claim. Ford, 2007 WL 2302816 at *11.

**3.     Harrison Smith Cannot Establish the Essential Elements of Her Claim for Retaliation for Pursuing Her Rights Under Title VII or O.R.C. §4112.**

"Direct evidence of discrimination occurs when either the decision-maker or an employee who influenced the decision-maker made discriminatory comments related to the employment action in question." Taylor, 2008 WL 4647690 at*7.  Harrison Smith alleges Hoffman's performance evaluations given on December 13, 2005 were retaliatory.  (VC, ¶33.)  As set forth above, Hoffman's evaluations were not "adverse employment actions" in the sex discrimination context as they did not affect the terms and conditions of her employment.  As set forth below, they were not "adverse employment actions" in

the retaliation context, as a matter of law, as they would not have dissuaded a reasonable employee from making a charge.  Lahar v. Oakland County, 304 Fed. Appx. 354, 357 (6th Cir. 2008).  "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces injury or harm."  Taylor, 2008 WL 4647690 at *9.  Hoffman's evaluations did not produce injury or harm and could not, therefore, be considered retaliation in violation of Title VII.

As Hoffman's evaluations were not retaliation from which Title VII was designed to protect an individual, they could not be considered direct evidence of such retaliation.  As Hoffman retired on December 28, 2005, prior to any of the other alleged "adverse employment actions," and there is no evidence Hoffman or the performance evaluations were considered by the decision-makers in any of these actions, any statement in the evaluations could not be direct evidence these actions were taken with discriminatory intent.  As Harrison Smith has alleged no other direct evidence of retaliation, she must establish her *prima facie* claim with indirect evidence.

In order to establish a *prima facie* claim for Title VII retaliation with circumstantial evidence, the plaintiff must establish 1) she engaged in protected activity; 2) the protected activity was known by the employer; 3) the defendant took an adverse employment action; and 4) there exists a causal connection between the protected conduct and the adverse employment action.  Mickey v. Zeidler Tool and Die Company, 516 F.3d 516, 523 (6th Cir. 2008).  Harrison Smith cannot establish these elements.

### a)      Harrison Smith cannot establish protected conduct.

Title VII contains a participation clause, which prohibits retaliatory conduct by an employer when an employee has participated in an EEOC proceeding, and an opposition clause, which prohibits retaliatory conduct against an employee has opposed a violation of Title VII.  Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989).  Although she alleged in Charge 1 the

decision not to promote her to Assistant Chief "was done ... in retaliation for pursuing my civil rights in employment," there is no evidence Harrison Smith participated in any EEOC proceeding or opposed any discriminatory conduct prior to that decision.  There is no evidence the Park District knew of any belief by Harrison Smith she had been discriminated against because of her sex prior to that decision.  Her first notification to the Park District was in November of 2005 when she threatened Newsom with having filed a lawsuit.  The failure to promote her to Assistant Chief could not, therefore, have been retaliation for her complaints she was not promoted.

In Charge 1, Harrison Smith further asserts Hoffman's evaluations in December 2005 and her suspension and demotion in May of 2006 were in "retaliation for stating the desire to charge discrimination in te [sic] workplace."  As there is no evidence, Harrison Smith had "participated" in any EEOC proceeding prior to these employment actions, these claims must be considered under the opposition clause.  Id. at 1313.  Harrison Smith's first mention of sex discrimination occurred during her conversation with  Newsom in November of 2005 when she caused him to believe she had already filed a sex discrimination lawsuit.

The opposition clause "does not protect all opposition activity.  Courts are required to balance the purpose of the Act to protect persons engaging reasonably in activities opposing ... discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel ....  The requirements of the job and the tolerable limits of conduct in a particular setting must be explored."  Id.

In order to be protected under the "opposition clause," the employee must reasonably believe she is opposing conduct unlawful under Title VII and she must utilize reasonable means of opposition.  Johnson v. University of Cincinnati, 215 F.3d 561, 579-80 (6th Cir. 2000).  First, Harrison Smith did not

have a reasonable belief she was opposing sex discrimination when she threatened Newsom with having filed a lawsuit in November of 2005.  Harrison Smith was only "playing the female card" in a last ditch effort to keep Spreckelmeier from assuming the position because her other efforts to spread rumors about his prior indiscretions had failed and he had not suffered an untimely death.  Not only had Harrison Smith not filed any lawsuit, she testified, as of the time she made the threat, she had no intention of actually filing a lawsuit.  (HS Dep. 782:10-20.)  She informed Sgt. Brooksbank on July 1, 2006 that as of that date she still had no intention of filing a lawsuit.  (Brooksbank Aff., ¶3.)  Harrison Smith did not object to Spreckelmeier's promotion because she believed it to have been an unlawful employment practice, but because she disagreed with the wisdom of this business decision and she wanted the job.  Booker, 879 F.2d at 1313.

Second, Harrison Smith's "manner of opposition" was not reasonable if that is how she intends to classify her behavior in the Computer Incident.  Making a claim of discrimination does not give the employee free reign to behave in an unacceptable manner.  "An employee is not protected when [she] violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals."  Id.  Harrison Smith's conduct in the Computer Incident does not become protected simply because she has previously alleged sex discrimination.  Harrison Smith "is not allowed to immunize herself from being fired or denied a promotion" by engaging in protected conduct.  Hartsel, 87 F.3d at 804-805.

 "An employer does not violate Title VII when it takes adverse employment action against an employee to preserve a workplace environment that is governed by rules, subject to a chain of command, free of commotion, and conducive to the work of the enterprise."  Matima v. Celli, 228 F.3d 68, 79 (6th Cir. 2000).     Harrison Smith's behavior, including her dishonesty, during the investigation of the

36

Computer Incident resulted in the degree of her discipline, suspension and demotion.  The fact she had threatened Newsom with a discrimination claim some six months earlier, a threat she admitted was empty, did not allow her to behave in a manner violative of the expectations of the Ranger Department.

Following her return from her suspension, Harrison Smith objected to every decision of her superiors, including decisions as to assignments, shifts, and timecards, in spite of the fact she was being treated similarly to male employees.  Harrison Smith's conduct following her return from suspension and the filing of Charge 1 falls under the "participation clause."  Although, activity within the scope of the participation clause is generally protected from retaliation, "the fact an employee files a complaint or a charge does not create any right on the part of the employee to miss work, fail to perform assigned work, or leave work without notice."  (Internal citations omitted.)  Booker, 879 F.2d at 1312.  It also does not create any right of the employee to special treatment or to threaten other employees, both superiors and coworkers, with lawsuits when special treatment is not received.  As set forth above, Harrison Smith was treated no more harshly than employees who had not engaged in protected conduct with respect to work and shift assignments, due process, and fitness for duty evaluations.

Like the plaintiff in Matima, Harrison Smith was not content to pursue her administrative and legal remedies.  Instead, she and her husband  antagonized other employees, even those who were attempting to satisfy her demands.  Such conduct is not protected.  Matima, 228 F.3d at 81.  Such conduct is particularly inappropriate for police officers who are held in "a position of honor and respect" by the public and are, therefore, "held to a higher standard of conduct than the general public."  Jones v. Franklin County Sheriff, 52 Ohio St.3d 40, 43, 555 N.E.2d 940, 944 (1990).

Harrison Smith used threats of grievances and lawsuits as a sword when her other efforts failed to prevent Spreckelmeier from assuming the position of Assistant Chief and continued to do so when she

was not given the special treatment she had received as an insider prior to her husband's retirement. Nonetheless, Harrison Smith failed to file a charge with the OCRC until May of 2006 or to file this action until January of 2008.  She offers no evidence the Park District prevented her from filing a charge or a lawsuit or from pursuing her rights under the discrimination/harassment policies of the Park District. She was clearly not afraid to voice her opinion or her objections as evidenced by the numerous requests for workplace resolutions she filed and the demands she made of both her superiors and coworkers for special treatment.  These threats were not a result of a reasonable belief she was discriminated against because of her sex, but a weapon to use against anyone who did not comply with her wishes.

The discrimination laws are not designed to serve as a sword.  Thompson, 2006 WL 783395 at *12 citing Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 705 (4th Cir. 2001)(disability discrimination laws are to be used as a shield to protect individuals from disability discrimination, and not as a sword to manipulate employers); E.E.O.C. v. Sara Lee Corp., 237 F.3d 349, 356 (4th Cir. 2001) ( protected employees are not entitled to preferential treatment as "the ADA operates as a shield against discrimination; the statute is not a sword used to punish non-disable workers").   The attempted use of them as such is not protected conduct.

> **b)**      **Harrison Smith cannot establish the majority of the actions of the Park District to which she objected qualify as adverse employment actions even in the retaliation context.**

 "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces injury or harm."  Taylor, 2008 WL 4647690 at *9.  "Not every act affecting an individual's employment can be considered an adverse retaliatory action giving rise to liability."  Randolph v. Ohio Dept. of Youth Services, 453 F.3d 724, 736 (6th Cir. 2006).   "A materially adverse employment action in the retaliation context consists of any action that well might have dissuaded a reasonable worker from

making or supporting a charge of discrimination."  <u>Michael</u>, 496 F.3d at 596 "Normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.  The standard is the reactions of a reasonable employee, not the plaintiff herself, in view of the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings."  <u>Lahar</u>, 304 Fed. Appx. at 357.

As set forth above, other than her suspension/demotion and termination, the employment actions to which Harrison Smith objected do not qualify as "adverse employment actions" so as to support a sex discrimination claim.  These include: district and shift assignments, due process, and time cards.  They similarly fail to support a claim for retaliation as a reasonable employee would not be dissuaded from making a charge of discrimination based upon being treated the same as similarly situated employees.

<u>**c)       Harrison Smith cannot establish a causal connection.**</u>

Even if Harrison Smith could establish her threats to Newsom in November of 2005 were protected conduct and her suspension/demotion in May of 2006 was an "adverse employment action," she cannot establish a causal connection between the two in order to meet the final step of his *prima facie* case.  <u>Johnson</u>, 215 F.3d at 582.  "[T]he mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation for the discrimination claim."  <u>Booker</u>, 879 F.2d at 1314.

There is no temporal proximity in this case in which no alleged adverse employment action followed Harrison Smith's threats to Newsom in November of 2005 until her suspension/demotion for the Computer Incident in May of 2006, more than six months later.  Even a five-month gap has been found insufficient to establish a causal connection.  <u>Lahar</u>, 304 Fed. Appx. at 359.

With respect to the referrals for fitness for duty examination to Dr. Cobb and Dr. Daum, it is

clear these were a result of Harrison Smith's conduct following her filing of Charges with the OCRC and not as a result of her protected conduct.  With respect to her termination, the evidence reveals Dr. Daum's determination Harrison Smith was psychologically unfit for duty, the basis for which determination was not refuted by her own evaluator, Dr. Manges, caused her termination.

Federal case law interpreting Title VII is generally applicable to cases involving alleged violations of O.R.C.; therefore, because Harrison Smith's discrimination claim under Ohio law is subject to the same analysis, the Park District is entitled to summary judgment as to her state law retaliation. Ford, 2007 WL 2302816 at *11.

## C.    THE PARK DISTRICT IS ENTITLED TO SUMMARY JUDGMENT AS TO HARRISON SMITH'S CLAIMS OF SEXUAL HARASSMENT.

To establish a claim for a hostile work environment based upon sexual harassment, the plaintiff must show: 1) she was a member of a protected group; 2) she was subjected to unwelcome harassment; 3) the harassment complained of was based on sex; 4) the charged sexual harassment created a hostile work environment; and 5) the employer is liable.  Randolph, 453 F.3d at 733.  Harrison Smith cannot establish she was subjected to unwelcome harassment based on sex or the harassment created a hostile work environment.[12]

### 1.    Harrison Smith Was Not Subjected to Unwelcome Harassment Based on Sex.

There is no evidence the conduct of Harrison Smith's supervisors or coworkers was "harassment" much less that it was harassment based on her sex.  "[I]t is important to distinguish

_____

[12]The elements and burden of proof are the same in claims for hostile work environment based upon age and disability discrimination.  Randolph, 453 F.3d at 733.  The Verified Complaint contains no factual allegations that could be interpreted to set forth a claim of a hostile work environment because of Harrison Smith's age or "disability;" therefore, this claim will be treated solely as a claim of hostile work environment based upon sex.

between harassment and discriminatory harassment in order to ensure that Title VII does not become a general civility code." Bowman v. Shawnee State University, 220 F.3d 456, 464 (6th 2000).  A "hostile-work-environment claim is cognizable only if the purported harassment, viewed in conjunction with all of the circumstances, occurred because of the employee's protected status." Id.  "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex.  We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000).

Any friction was a result of Harrison Smith's own confrontational style.  In spite of her own awareness of her confrontational style, Harrison Smith assumes any conflicts with her superiors, as well as other employees, were a result of sex discrimination instead of their dislike of her or her style.  However, any "harassment" with which Harrison Smith was involved emanated from her.  She, as well as her husband, threatened superiors and inferiors, friends and enemies, with the filing of requests for workplace resolutions, lawsuits, and the "dirt" she claimed to have on everyone in the Ranger Department.  She carried around a tape recorder and challenged every decision of superiors and coworkers, including coworkers who were her friends and were going out of their way to meet her demands.

In Crawford v. Medina General Hospital, 96 F.3d 830 (6th Cir. 1996), the Sixth Circuit considered a hostile work environment claim under the ADEA.  The court noted the "deep morale problems" existing at the place of business, but found the plaintiff could not establish harassment was based upon her age.  The court noted the plaintiff's theory "appears wholly based on a false syllogism: A) My coworkers hate me; B) I am old; C) My coworkers hate me because I'm old."  The court

concluded: "Unquestionably, there was hostility and abusiveness in this working environment, but the evidence suggests that the atmosphere stemmed from a simple clash of personalities.  In any event, there is an absence of evidence that it stemmed from a dislike of people over a particular age."  Id. at 836.  Similarly, in Peecook v. Northwestern National Insurance Group, 156 F.3d 1231, 1998 WL 476245 (6th Cir. 1998), the Sixth Circuit noted the "false syllogism" of Crawford.  The court went on to note: "As in Crawford, there unquestionably was some measure of hostility between Plaintiff and Defendants.  Personality conflicts alone, however, will not support an ADEA claim.  To meet the second prong, such hostility must be age-related."  Id. at *3.  In this case, Harrison Smith cannot establish any conflict with other employees was based on her sex as opposed to her personality and conduct.

## 2.      There Was No Hostile Work Environment.

"The vital issue in all sexual harassment cases is whether a supervisor's words and actions altered the terms or conditions of the plaintiff's employment.  In a 'hostile work environment' situation, a supervisor's demeaning behavior does not alter the terms or conditions of employment, and give rise to Title VII liability, unless it is severe or pervasive.  In a 'quid pro quo' situation, however, Title VII liability exists if a plaintiff shows that her supervisor took some 'tangible employment action' as a result of the plaintiff's refusal to submit to sexual demands.  In such cases, the supervisor's conduct explicitly and necessarily alters the terms or conditions of employment, thereby giving rise to a Title VII sexual harassment claim."  Hall v. Hebrank, 102 F.Supp.2d 844, 854 (S.D. Ohio, W.D. 1999).

In this case, Harrison Smith does not allege her submission to "unwelcomed advances was an express or implied condition for receiving job benefits or that [her] refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment" so as to establish the alteration of the conditions of her employment.  Bowman, 220 F.3d at 461.  Therefore, "[i]n order to allege a hostile work

environment, [Harrison Smith] must demonstrate that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Nickell, 76 Fed.Appx. at 94. "The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and that the victim must subjectively regard as abusive." Hapner v. South Community, Inc., 2005 WL 3446274 (Ohio App. 2 Dist. Dec. 16, 2005). "Both an objective and subjective test must be met; in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." Randolph, 453 F.3d at 733.

Harrison Smith cannot meet an objective test in which the Court must consider "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's performance." Randolph, 453 F.3d at 733. "Simple teasing, offhand comments, and isolated incident (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. Harrison Smith alleges no physical threats at all.

Harrison Smith cannot meet the subjective test as Harrison Smith herself engaged in conduct similar to that which she objects. The word "femos," which Harrison Smith alleges was used by Newsom, was coined by Harrison Smith herself and used by her circle of friends to distinguish the women from the "menos." Harrison Smith cannot establish conduct "severe or pervasive" enough to have created an objectively hostile environment, much less that such an environment was caused by her sex.

"State law claims for sexual harassment brought under Ohio Revised Code §4112 are subject to the same standards applicable to federal harassment claims brought under Title VII." Blankenship v.

43

Parke Care Centers, Inc., 913 F.Supp. 1045, 1050 (S.D. Ohio 1995).  As Harrison Smith cannot establish

a hostile work environment based on sex under Title VII, her claim under R.C. 4112 must also fail.

**D.      THE PARK DISTRICT IS ENTITLED TO SUMMARY JUDGMENT AS TO HARRISON
          SMITH'S CLAIMS OF DISABILITY AND AGE DISCRIMINATION AND
          RETALIATION.**

**1.      Harrison Smith Failed to Exhaust Administrative Remedies Prior to Filing Her
          Claims for Disability Discrimination Under the ADA and Age Discrimination Under
          the ADEA.**

Contrary to Harrison Smith's allegations in her Verified Complaint, (VC, ¶110), Harrison Smith

asserted absolutely no allegations of disability or age discrimination or retaliation for pursuit of her

rights under the disability or age discrimination statutes in any of her Charges.  All three Charges were

prepared with the assistance of counsel.

Harrison Smith failed in all three Charges to check the boxes alleging disability or age

discrimination.  She further failed to allege any disability, any request for reasonable accommodation, or

any refusal by the Park District of such a request.  In fact, Charges 1 and 3 do not contain the word

"disability" or  contain any reference to disability or discrimination based upon a disability.  In Charge 2,

she refers to two fitness for duty evaluations only to the extent she believed they were required by the

Park District in retaliation for her filing of Charge 1 asserting sex discrimination and retaliation.  The

word "disability" appears only in Harrison Smith's allegation she was given "the options to resign, retire

or seek disability retirement, ...."  The word "age" does not appear in any of her Charges.

"Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the

claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow

out of the EEOC charge."  Abeita v. Transamerica Mailings, Inc., 159 F.3d 246, 254 (6th Cir. 1998).

This Court has held the exhaustion of remedies and charge requirements of Title VII parallel those of the

ADEA.  Monnheimer v. A.C. Nielsen, 2008 WL 5333808*4 (S.D. Ohio, W.D. 2008).  When an alleged

unlawful employment practice occurs in Ohio, a deferral state, a claimant has 300 days to file a charge

with the EEOC under Title VII or the ADEA.  Amini, 259 F.3d at 498. The same exhaustion

requirement applicable to sex and age cases is applicable to claims of handicap discrimination.  Smith v.

United States Postal Service, 742 F.2d 257, 262 (6th Cir. 1984).

In Jones v. Sumser Retirement Village, 209 F.3d 851, 853 (6th Cir. 2000), the Sixth Circuit cited

its prior decision in Abeita, supra, to find the district court had lacked subject matter jurisdiction to

consider the plaintiff's ADA claim as the plaintiff failed to allege in her charge that the employer had

"failed to accommodate his disability."  The plaintiff had alleged only that she was disabled and that she

believed her disability was a factor in her termination.  The court found her claim of failure to

accommodate could not reasonably be expected to grow out of her initial charge of discrimination.  Id.

Harrison Smith failed in her Charges not only to allege a failure to accommodate, but to allege

any disability, any discrimination because of that disability, that she was qualified for the position from

which she was terminated with or without accommodation, that she requested any reasonable

accommodation, or that she was denied any such reasonable accommodation.  She failed to exhaust the

administrative remedy necessary to pursue an ADA claim for disability discrimination; therefore, any

such claim should be dismissed.  Harrison Smith's failure to check box for age discrimination in filings

with the OCRC and EEOC prevents her from pursuing a claim for age discrimination under the ADEA.

Metzenbaum v. John Carroll Univ., 987 F.Supp. 610, 618 (N.D. Ohio, E.D. 1997).

Any claim of retaliation for objecting to disability or age discrimination is likewise barred by

Harrison Smith's failure to assert any such factual allegations in her Charges.  "Retaliation claims are

generally excepted from this filing requirement because they usually arise after the filing of the EEOC

45

charge.  However, this exception to the filing requirement does not apply to retaliation claims based on conduct that occurred before the EEOC charge was filed."  <u>Abeita</u>, 159 F.3d at 254.  Harrison Smith failed in any of her Charges to allege retaliation for her opposition to disability or age discrimination, including Charge 3, which was filed after her termination.  Any retaliatory action would necessarily have occurred prior to the filing of Charge 3.  Harrison Smith's failure to assert retaliation for opposing disability or age discrimination as of the filing of Charge 3 prevents her from pursuing such a claim before this Court.  The Park District is entitled to the dismissal of Harrison Smith's claims for retaliation for opposition to disability or age discrimination.

### 2.    Harrison Smith Cannot Establish the Essential Elements of Her Claims for Disability Discrimination Under the ADA or O.R.C. §4112.

Even if Harrison Smith had asserted factual allegations of disability discrimination in her Charges, such claims must fail.  The Sixth Circuit has held that an ADA plaintiff must demonstrate that disability was the <u>sole</u> reason for the adverse employment action.  <u>Hedrick v. Western Reserve Care System</u>, 355 F.3d 444, 454 (6th Cir. 2004).  The Sixth Circuit has since "reaffirmed that *Monette* requires that a plaintiff demonstrate that disability was the sole reason for the adverse employment action." (Internal citation omitted.)  <u>Macy v. Hopkins County School Board of Education</u>, 484 F.3d 357, 364 fn2 (6th Cir. 2007).  As set forth above, in the three Charges Harrison Smith filed with the OCRC she claimed discrimination, harassment, and retaliation based upon <u>sex.</u>  These allegations prevent Harrison Smith from establishing her "disability" was the sole reason for any adverse employment action; therefore, the Park District is entitled to summary judgment on her ADA claim.

A plaintiff may establish a claim for disability discrimination either with direct or circumstantial evidence.  If the plaintiff has "direct evidence that the employer relied on his or her disability in making an adverse employment decision, or if the employer admits reliance on the handicap," the plaintiff bears

the burden of: 1) establishing she is "disabled"; 2) establishing she is "otherwise qualified" for the position in spite of her disability without accommodation, with a proposed reasonable accommodation or with an alleged "essential" job requirement eliminated.  If the plaintiff meets this burden, the employer must then prove either that the proposed accommodation will impose an undue hardship or that the challenged job requirement is "essential."  Monette, 90 F.3d at 1186.

If the plaintiff lacks direct evidence of discrimination, she may establish a *prima facie* case of disability discrimination by showing: 1) she is disabled; 2) she is otherwise qualified for the position, with or without reasonable accommodation; 3) she suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.  If the plaintiff meets this burden, the employer must then offer a legitimate explanation for its action.  If the employer meets this burden of production, the plaintiff must "introduce evidence showing that the proffered explanation is pretextual.  Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times."  Id. at 1186-86.  Harrison cannot establish disability discrimination under either method of proof.[13]

### a)   Harrison Smith failed to allege and can not establish she was "disabled" under the ADA.

Harrison Smith has failed to even allege in her Verified Complaint that she is "disabled," much less to identify her disability.  Whether she is proceeding with direct evidence of discrimination or seeks to establish her claim indirectly, Harrison Smith is required to meet the threshold requirement of proving she has a "disability."  "It is well settled that not every physical or mental impairment constitutes a disability under the specific parameters of the ADA."  Daugherty v. Sajan Plastics, Inc., 544 F.3d 696,

---

[13] "The analysis of claims under the Americans with Disabilities Act roughly parallels those brought under the Rehabilitation Act of 1973."  Monette, 90 F.3d at 1177.

703 (6th Cir. 2008).  "The ADA defines a 'disability' as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or ( C) being regarded as having such an impairment. 42 U.S.C. §12102(2)."  Marziale, 2007 WL 4224367 at *4.  "Courts consider 'substantially limits' and 'major life activities' to be 'terms of art' ...."  Thompson v. Potter, 2006 WL 783395 *9 (S.D. Ohio, E.D. 2006).  These terms are to be strictly construed "to create a demanding standard for qualifying as disabled."  Id.  Harrison Smith has failed to allege and cannot establish any "major life activity" in which she was  "substantially limited" so as to establish she had a disability.

Even in deposition, Harrison Smith was unable to identify her disability.  She testified, "I probably have several disabilities, one of which is that my eyesight is not as good as it once was."  (HS Dep. 481:17-19.)  However, she testified her eyesight is corrected by wearing eyeglasses purchased without a prescription.  (HS Dep. 482:2-6.)  She could identify no actions taken by the Park District as a result of her deficient eyesight.  (HS Dep. 483:3-6.)  After further prompting, Harrison Smith stated the injuries she sustained to her wrists at Woodland Mound were the basis of her disability claim.  (HS Dep. 493:4-7.)  However, she testified she still performs all of activities she did prior to this injury.  (HS Dep. 502:11-16.)  After further prompting, she stated her disability was "the injury that is related to my mental well-being."  (HS Dep. 494:2-3.)  She testified the effect of this injury is she does not "take the chances [she] used to, ...."  (HS Dep. 505:4-5.)  None of the "disabilities" identified by Harrison Smith meet the statutory definition of "disabled."

### b)      Harrison Smith failed to allege and can not establish she was "otherwise qualified."

Whether she is proceeding with direct evidence of discrimination or seeks to establish her claim indirectly, Harrison Smith is required to meet the threshold requirement of proving she was "otherwise

qualified."  Harrison Smith has failed to allege she was otherwise qualified without accommodation, or that she proposed any "reasonable accommodation" or the elimination of any non-essential job requirement so as to make her otherwise qualified.

Under the ADA, a plaintiff bears the initial burden of proposing an accommodation and showing that accommodation is objectively reasonable.  Manigan v. SORTA, 2009 WL 174137*7 (S.D. Ohio, W.D. 2009).  Harrison Smith has failed to allege and cannot prove she proposed any reasonable accommodation.  The disabled individual bears the initial burden of proposing an accommodation and showing that accommodation is objectively reasonable both in terms of efficaciousness and costs.  Thompson, 2006 WL 783395 at *14.   "[E]mployers are not required to create new positions for disabled employees in order to reasonably accommodate the disabled individual."  Monette, 90 F.3d at 1187.

Harrison Smith did not like the "light duty" assignment she was given upon her return from her knee injury.  She would have preferred to perform accreditation and requested the Park District move Sheli McDonough out of her position performing accreditation to make room for Harrison Smith in spite of the fact McDonough had been performing this job even prior to Harrison Smith's injury.  The fact that an employee might have "preferred" another position, does not trigger any requirement on the part of the defendant to accommodate and the employer's refusal to provide the employee with the "preferred" position is not a failure to accommodate.  Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 883 (6th Cir. 1996).  An employer is not required to displace another employee to create a position for a disabled employee.  It is Harrison Smith's burden to establish there existed an open position whose essential duties she could perform.  Peltier, 388 F.3d at 989.

Harrison Smith's inability to prove essential elements of her claim entitle the Park District to summary judgment on her claim under the ADA.  Dismissal of her claim under the ADA for this reason

will also resolve her claim of disability discrimination under R.C. 4112.  Manigan, 2009 WL 174137.

### 3.  Harrison Smith Cannot Establish the Essential Elements of Her Claim for Age Discrimination Under the Age Discrimination in Employment Act ("ADEA") or O.R.C. §4112.

A plaintiff may establish a claim for age discrimination either with direct or circumstantial evidence.  Harrison Smith can offer no direct evidence of age discrimination; therefore, in order to prevail, she must prove her case with circumstantial evidence.  This Court has held, pursuant to Sixth Circuit decisions, "[t]he burden-shifting framework for circumstantial-evidence cases has been applied in the context of claims brought under the ADEA.  Sauer, 2008 WL 731492 at *6.  If the plaintiff can establish her *prima facie* case, the burden shifts to the employer to offer a legitimate explanation for its action.  If the defendant satisfies this burden of production, the burden shifts back to the plaintiff to introduce evidence showing the proffered explanation is pretextual.  Id. at *7[14].

As set forth above, the failure to promote cannot be the basis for a claim of age discrimination as Harrison Smith failed to file a charge based upon such a claim within the limitations period.  In any event, the individuals who were promoted are not substantially younger than Harrison Smith who was born on February 21, 1957.  Newsom, the individual who was promoted to Chief,  was born April 16, 1958.  (Newsom Aff., ¶22.)  He is over forty and approximately one year younger than Harrison Smith.  "The Sixth Circuit has found that a replacement who is six years or less younger than the plaintiff is not, as a matter of law, substantially younger for purposes of an ADEA *prima facie* case."  Sauer, 2008 WL 731492 at *7.  Spreckelmeier, the individual who was promoted to Assistant Chief was born on August

---

[14] The Supreme Court in Gross v. FBL Financial Services, Inc., 2009 WL 1685684 *6 (U.S.)(2009), recently noted it "has not definitively decided whether the evidentiary framework of McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), utilized in Title VII cases is appropriate in the ADEA context."

30, 1956.  (Spreckelmeier Aff., ¶9.)  He is over forty and slightly older than Harrison Smith.

With respect to her termination, there is no evidence any other Ranger found psychologically unfit for duty was not terminated.  With respect to the remaining employment actions, Harrison Smith cannot establish either these actions were "adverse employment actions" or similarly situated employees who were substantially younger were treated differently.

The Sixth Circuit has previously recognized a plaintiff asserting an ADEA claim must "show that age was a determining factor in the company's decision to discharge [her]."  Hile v. Pepsi-Cola, 108 F.3d 1377, 1997 WL 112404*5 (6th Cir. 1997).  "[L]iability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision...."  Id. at *6.  The Supreme Court recently reaffirmed this burden in Gross, 2009 WL 1685684 at *7, wherein the Supreme Court held: "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision."  Harrison Smith cannot establish age was the "but-for" cause of any action taken by the Park District.

"Under Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis."  Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 357 (6th Cir. 1998).  Harrison Smith's failure to state a claim under the ADEA prevents her from establishing a claim under O.R.C. §4112.

**4.     Harrison Smith Cannot Establish the Essential Elements of Her Claim for Retaliation Under the ADA, ADEA, and O.R.C. §4112.**

This Court has held in order to establish a *prima facie* claim for retaliation, a plaintiff must demonstrate: (1) she engaged in a protected activity; (2) her engagement in the protected activity was known to her employer; (3) the employer, thereafter, took an adverse employment action against her; and (4) a causal link exists between her engagement in the protected activity and the adverse employment

action. The same standards applicable to determining a claim for retaliation under Title VII are

applicable to claims of retaliation under the ADA.  The protected conduct must have concerned a

violation of the ADA.  Sauer, 2008 WL 731492.  Similarly, the protected activity under the ADEA must

have concerned a violation of the ADEA.  Fox v. Eagle Distributing Company, Inc., 510 F.3d 587, 591

(6th Cir. 2007).

As she never asserted any claims of disability or age discrimination or included any such claims

in her Charges, she cannot pursue claims that the actions of the Park District were in retaliation for such

protected conduct under the ADA or the ADEA.  First, Harrison Smith failed to allege and can offer no

evidence she ever complained of disability or age discrimination so as to establish she engaged in

conduct protected under the ADA or ADEA.  Second, there is no evidence of a causal link between any

protected activity and any adverse action.  "A causal link can be shown by either of two methods: (1)

through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an

inference of causation ....  However, temporal proximity alone will not support an inference of retaliatory

discrimination when there is no other compelling evidence."  Sauer, 2008 WL 731492 at *13.  Harrison

Smith cannot establish she engaged in protected activity known to her employer or otherwise much less

a causal link between such protected activity and any adverse employment action so as to establish her

claim for retaliation under the ADA or ADEA.

**E.     THE PARK DISTRICT HAS PRODUCED LEGITIMATE, NONDISCRIMINATORY
        REASONS FOR ITS EMPLOYMENT ACTIONS.**

Even if Harrison Smith could establish her *prima facie* case of discrimination under Title VII, the

ADA, the ADEA, or R.C. 4112, the Park District can overcome the presumption of discrimination by

producing a "legitimate, nondiscriminatory reason for the employment action."  Hartsel, 87 F.3d at 800.

"It is important to note that the defendant need not *prove* a nondiscriminatory reason ..., but need merely

*articulate* a valid rationale." Id.

Harrison Smith was not promoted to Assistant Chief because of Newsom's friendship with her and his concern her husband would attempt to influence the Ranger Department through Harrison Smith if she was his second-in-command.  She was suspended and demoted as a result of her conduct during the investigation in the Computer Incident, including her dishonesty.  She was terminated as a result of Dr. Daum's finding she was psychologically unfit for duty.  The remaining actions to which Harrison Smith objects neither meet the legal definition of "adverse employment action" nor reveal treatment of Harrison Smith that was harsher than the treatment of similarly situated male employees.  The evidence reveals the Park District attempted to meet Harrison Smith's demands to the extent it could do so with respect to assignments and shifts.

**F.  HARRISON SMITH CANNOT PURSUE A §1983 CLAIM BASED UPON CONDUCT IN VIOLATION OF TITLE VII, THE ADEA, OR THE ADA.**

Harrison Smith asserts gender discrimination under Title VII and 42 U.S.C. §1983 at Count 1 of her Verified Complaint, as well as retaliation under federal law at Count VIII.  (VC, ¶¶115, 149.)  "Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII." Day v. Wayne County Bd. of Auditors, 749 F.2d 1199, 1204 (6th Cir. 1984). Her retaliation claims based upon her opposition to conduct in violation of Title VII and her participation in Title VII proceedings arise under Title VII and cannot, therefore, be the basis for a claim under §1983.  As Harrison Smith claims even the "failure to promote" her to Assistant Chief was retaliatory, all of her claims arise under the retaliation provisions of Title VII.  She may not, therefore, base a §1983 claim on them.

Harrison Smith "may not bring her ADEA claim under § 1983. The detailed statutory remedy created by the ADEA constitutes the exclusive means for enforcement of the Act." Janes v. Bardstown

City Schools Bd. of Educ., 1996 WL 536794* 4 (6th Cir. 1996).  Similarly, a claim created by the ADA

constitutes the exclusive means of enforcement.  Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522,

1531 (11th Cir. 1997) cited by this Court in Manigan, 2009 WL 174137*8.

## G.      THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER HARRISON SMITH'S STATE LAW CLAIMS.

The Court may decline to exercise jurisdiction over Harrison Smith's state law claims if "'the

district court has dismissed all claims over which it has original jurisdiction.'  28 U.S.C. §1367©(3)."

Sibley v. Putt, 2007 WL 2840392 *2 (S.D. Ohio, W.D. 2007).

## H.      THE PARK DISTRICT IS IMMUNE FROM LIABILITY FOR HARRISON SMITH'S STATE LAW CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, INVASION OF PRIVACY, AND SPOLIATION.

The Park District, which includes the individual Defendants in their "official capacities," is

immune from liability for Harrison Smith's state law claims of intentional infliction of emotional

distress, invasion of privacy, and spoliation, as these claims involve intentional torts.  Political

subdivisions are shielded from civil liability as provided by R.C. Chapter 2744.  Ohio Revised Code

§2744.02(A)(1) provides a broad immunity from tort liability.

Ohio courts have held: "Because Section 2744.02(B) includes no specific exceptions for

intentional torts, court have consistently held subdivisions are immune from intentional tort claims."

Chase v. Brooklyn City School District, 141 Ohio App.3d 9, 19 (8th Dist. 2001); see also Zieber v.

Heffelfinger, 2009 WL 695533 *4 (Ohio App. 5th Dist. 2009). There is no exception to immunity for

intentional infliction of emotional distress.  Wilson v. Stark County Dept. Of Human Services, 70 Ohio

St.3d 450, 4512 (1994).  An intentional tort does not arise out of the employment relationship so R.C.

2744.09(B) does not apply to except an employer's intentional tort from the immunity of R.C. 2744.

Zieber, 2009 WL 695533 at *4.

Based upon its immunity from claims for intentional torts, the Park District will not address Harrison Smith's claims for intentional infliction of emotional distress, invasion of privacy, and spoliation in detail.  In the event the Court finds the Park District not entitled to immunity, the Park District incorporates the arguments that Harrison Smith cannot prove the essential elements of these claims set forth in the Motion for Summary Judgment filed on behalf of the individually named Defendants.

## I.     HARRISON SMITH IS NOT ENTITLED TO PUNITIVE DAMAGES.

Plaintiff is not entitled to punitive damages against the Park District, including the individual Defendants in their "official capacities."  R.C. 2744.05(A) provides with respect to actions against a political subdivision: "Punitive or exemplary damages shall not be awarded."

## J.     HARRISON SMITH CANNOT ESTABLISH THE ESSENTIAL ELEMENTS OF HER CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

In Ohio, "liability for negligent infliction of emotional distress arises where a bystander to an accident suffers serious and foreseeable emotional injuries.  Ohio courts do not recognize a separate tort for negligent infliction of emotional distress in the employment context."  Williams v. York International Corporation, 63 Fed.Appx. 808, 814, 2003 WL 1819637*5 (6th Cir. 2003).

## III.    CONCLUSION

For these reasons, the Park District is entitled to summary judgment in its favor as to all of the claims contained in Harrison Smith's Verified Complaint.

Respectfully submitted,

  **s/Lawrence E. Barbiere**
Lawrence E. Barbiere,  Ohio Bar Number: 0027106
Michael E. Maundrell,   Ohio Bar Number: 0027110
***Attorneys for Defendants***
**SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
5300 Socialville-Foster Road, Suite 200
Mason, Ohio 45040
(513) 583-4200
(513) 583-4203 (fax)
Email:  lbarbiere@smbplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to the following:   David E. Hardin, Esq., *Attorney for Plaintiff,* Hardin, Lefton, Lazarus & Marks, LLC.

  **s/ Lawrence E. Barbiere**
**Lawrence E. Barbiere**

56

<u>**APPENDIX**</u>

**A.   ATTACHED HERETO ARE COPIES OF THE FOLLOWING PAGES OF DEPOSITIONS CITED HEREIN:**

<u>Kay Harrison Smith</u>

27, 31, 61, 141-143, 160, 167-168, 198, 201-202, 204-206, 211-212, 244, 293-94, 295-296, 387, 393, 401, 405, 425, 439-440, 445, 481-83, 493-494, 502, 505, 529-531, 556, 577, 626,629, 757, 782, 785, 811-812, 814, 827, 864, 899-902, 905, 907, 909-910, 946, 948, 950, 953, 956, 958, 967, 976, 978-979, 982, 984, 1034, 1036, 1061, 1065, 1070, 1076, 1089.

<u>Joyce Stapleton</u>

26, 68-71.

<u>Dr. Kenneth Manges</u>

57, 70.

**B.   ATTACHED HERETO ARE COPIES OF THE FOLLOWING DEFENDANTS' EXHIBITS CITED HEREIN:**

5(pp. 9-17), 6, 13, 15, 17, 18, 23, 27, 28, 34, 55, 58, 59, 65, 83, 87, 89, 142, 143, 144, 155, 161, 173, 176, 180, 297, 320, 323, 359, 360.

**C.   ATTACHED HERETO ARE COPIES OF THE FOLLOWING AFFIDAVITS FILED IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CITED HEREIN:**

Steve Newsom, Jack Sutton, Gary Hoffman, Rick Spreckelmeier, Greg Grimm, and Mark Brooksbank.

57