**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KAY HARRISON SMITH,                         CASE NO. 1:08cv60

    Plaintiff,                         Judge Michael R. Barrett

  vs.

HAMILTON COUNTY PARK DISTRICT
et al.,

    Defendants.

## <u>ORDER</u>

   This matter is before the Court pursuant to Defendants' motion for summary judgment (Docs. 31 and 43) as well as Defendants' motion to strike (Doc. 67).  Both motions are fully briefed and ripe for decision.

I. <u>Motion to Strike</u>

   Defendants' filed a motion to strike portions of the verified complaint, the affidavits of Plaintiff and her husband Gregory Smith as well as the deposition of Chief Michael Wylie.  Defendants argue that certain portions of the verified complaint are not based on her personal knowledge but instead her personal belief.  In addition, Defendants argue that certain evidence is comprised of conclusory allegations, legal conclusions, hearsay and improper expert testimony.

   Plaintiff responded that Defendants' motions should be denied and argued that the portions of the verified complaint identified by Defendants contain factual allegations but would agree that any portions that the Court deems to be conclusory allegations should be stricken.

   Both parties filed an excessive amount of paper pertaining to the motion for

summary judgment in this case.  The Court is not going to sift through, line by line,  certain documents to strike them from the record.  However, the Court will not consider "evidence" that it deems to be conclusory, legal conclusions or hearsay.  As for the deposition of Chief Wylie, the Court is not going to strike his deposition testimony as irrelevant at this time. Therefore, the motion is GRANTED, in part, and DENIED, in part.

II.     Background Information and Relevant Facts

Plaintiff Kay Harrison Smith ("Harrison Smith") filed suit against the Hamilton County Park District ("Park District") and the Board of Park Commissioners as well as the following individuals: Chief Steve Newsom, Captain Richard Spreckelmeier, Director Jack Sutton, Admin Director Nancy Montague and former Captain Gary Hoffman.[1]  Harrison Smith alleges gender discrimination in violation of Title VII, 42 U.S.C. 1983 and O.R.C. Section 4112, age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and O.R.C. Section 4112, disability discrimination in violation of the Americans with Disabilities Act ("ADA") and O.R.C. Section 4112, disparate treatment in violation of Title VII, retaliation, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy and spoliation of evidence.  Defendants have moved for summary judgment on all claims.

Harrison Smith is a female over forty years of age who alleges that she has a disability under the ADA.  She was hired by the Hamilton County Park District Ranger Department in 1984 as a Dispatcher and was subsequently promoted to Ranger. Harrison

---

[1]Plaintiff also names John/Jane Does 1-8 and ABC Companies and/or Corporations 1-8.  Since Plaintiff has failed to identify these defendants, they are dismissed.

Smith's husband Gregory T. Smith ("Smith") was likewise employed by the Ranger Department until he retired in 2002.  Harrison Smith was promoted to Sergeant in 2002 and then to Lieutenant in February of 2005.  Harrison Smith was the first female Lieutenant in the Ranger Department.  She was then terminated on August 31, 2007.

The Promotion of Defendant Newsom to Chief

In the Summer of 2004, former Chief Greer announced his plans for retirement, effective March of 2005.  The process to replace Greer as Chief was started.  The remaining three candidates, Steve Newsom ("Newsom"), Harrison Smith and Sergeant Grimm, interviewed one-on-one with Defendant Jack Sutton ("Sutton"), Director of the Park District.  Sutton then numerically ranked the three candidates. Harrison Smith ranked first on the OACP Assessment; Grimm ranked first on the presentation of the written report; and Newsom ranked first on panel interviews, one-on-one interviews, and the content of the written report. Sutton determined Newsom ranked highest overall and on October 28, 2004, announced the selection of Newsom to replace Greer.  This decision was made solely by Sutton.  Harrison Smith did not register any complaint about the selection of Newsom as Chief. She testified she was "never upset" about not being promoted to the position of Chief. (Harrison Smith Depo., p 198.)

The Promotion of Defendant Spreckelmeier to Assistant Chief

Subsequent to Newsom's promotion to Chief, Defendant Gary Hoffman ("Hoffman") announced he would be retiring from his position as Assistant Chief/Captain as of December 2005.  Newsom intended to promote two supervisors to the rank of Lieutenant with one to train with Hoffman until Hoffman's retirement at which time this supervisor would assume the position of Assistant Chief.  A panel, consisting of Newsom, Tom Doyle,

Chief of the Greenhills Police Department, and Lt. Norm Kandil, interviewed Harrison Smith, Richard Spreckelmeier, and Glen Smyth for the promotion to Lieutenant and the Assistant Chief position. Each candidate had to complete a written report and Newsom then held one-on-one interviews with the three candidates.

During Harrison Smith's interview with Newsom, she states that he called her the leader of a group known as the "femos" and accused her of using the "female card" to get the higher position. The "femos" are a group of employees of the Park District who get together socially. Most of the people who attend the social gatherings are females, however, all are welcome and often times the male spouses of the female employees attend the gatherings as well as some children and male rangers. According to Harrison Smith, Ken Schneider, the Safety Director, continued to perpetrate the term "femos" and coined the term "menos" to indicate the male rangers. It seems these terms were used in jest by many, including Harrison Smith, for years.

On February 16, 2005, Newsom circulated a memorandum advising all Ranger Department personnel that Sgts. Spreckelmeier and Harrison Smith had been promoted to the rank of Lieutenant and that Spreckelmeier would advance to the rank of Assistant Chief upon the retirement of Hoffman.

Harrison Smith disagreed with the decision naming Spreckelmeier as Assistant Chief and made her disagreement known. She felt she was more qualified for the position and that Spreckelmeier had a history of inappropriate personal relationships with female subordinate employees. Newsom states that he did not select Harrison Smith as his second-in-command based upon his friendship with Harrison Smith and her husband and his belief this friendship did not allow him to view her objectively. Newsom was also

4

concerned about the influence Smith would have attempted to have on Newsom and the Ranger Department through Harrison Smith if she was in the position of Assistant Chief. Harrison Smith counters that this reasoning can not be truthful since Newsom was Harrison Smith's supervisor while they were on mounted patrol and again at Miami Whitewater Forest when he was her Sergeant and she was a patrol officer.  During this time period, Newsom evaluated her over twenty times.  Newsom asserts that his fears were well founded given the fact that on February 18, 2005 Greg Smith sent an email demanding Newsom justify his decision to promote Spreckelmeier and not Harrison Smith to Assistant Chief. Smith believed that Spreckelmeier was not qualified for the position and that Harrison Smith was the better candidate.  However, there is also documentation that shows that Newsom stated that the reason Harrison Smith was not promoted was because he and Spreckelmeier were a better fit to the organization.  See PX 7 and 8 attached to Smith Aff.

During the period between the announcement of the promotions on February 16, 2005 and November of 2005, Harrison Smith made no allegations of discrimination.  In fact, Harrison Smith never made any allegations of discrimination during her tenure at the Park District until November of 2005.  Harrison Smith testified that she made no claims of discrimination prior to November of 2005, because she had hoped that due to some unnamed events, including the possibility of Spreckelmeier's untimely death, he would not become the Assistant Chief/Captain.  (Harrison Smith Depo. pp 201-215.)  It was only when it became clear that Speckelmeier would be promoted that Harrison Smith confronted Newsom about his decision to promote Spreckelmeier and first threatened a lawsuit.  Although she testified she had no intention of filing a lawsuit (Harrison Smith

Depo. p 626:10-15), she caused Newsom to believe she had already done so with references to "pending litigation." (Newsom Depo., pp 71-73).

Harrison Smith argues that Newsom chronicled her disagreements with the promotional decisions he made and that this activity was an avenue to remove her from the department.  However, Newsom states that he did this only because Harrison Smith made him believe that a lawsuit was going to be filed or already was filed.  This is supported by the documentation.  (See Newsom Depo., Exh. 2.)

Hoffman's Performance Evaluations

Prior to Hoffman's retirement, Hoffman prepared evaluations of Harrison Smith for 2005.  Hoffman prepared one evaluation for the period of March 2005, when she had assumed the position of Lieutenant, through May 31, 2005, and a second evaluation for the period of June through December 1, 2005.  Harrison Smith alleges that the timing of her evaluations and the fact that she had two in one year violates department policy.

In a meeting with Hoffman to discuss her evaluations, with respect to the first evaluation, Harrison Smith did not agree with Hoffman on her rating of 1 on "Quantity of Work." On the second evaluation, Hoffman had given Harrison Smith 2s in five of the eight categories and 1s in two categories. Hoffman gave Harrison Smith a 0 in the category of "Teamwork."  Despite this, she still qualified for a merit premium.

Harrison Smith objected to her rating of 0 in "Teamwork." According to Hoffman, Harrison Smith had caused the other employees to believe a suit had been filed or would soon be filed. Her co-workers' fear of being drawn into a lawsuit negatively affected their ability to work as a team. She then informed Hoffman that prior to meeting with him she had not intended to file a lawsuit, but she now intended to do so based upon her

6

evaluations. (Hoffman Aff., ¶4.)

On January 16, 2006, Harrison took her concerns regarding Hoffman's evaluations directly to Chief Newsom. Harrison Smith specifically requested the first evaluation be discarded and that her score from the second evaluation be doubled and that score used toward her point accrual as well as that any reference to a sexual discrimination lawsuit be removed. Newsom did eliminate the first evaluation noting that Harrison Smith had been promoted and given a substantial raise during that period. He also revised the second evaluation to cover the period from March, in which she began in the position of Lieutenant, to December 1, 2005. By agreement with Harrison Smith, Newsom increased her score on "Teamwork" to a 1.

After agreeing to Harrison Smith's request, Harrison Smith received a total of 322 points on her Ranger Performance Evaluation. This was the same total point score she had received from Hoffman on the first evaluation. This total point score qualified Harrison Smith for a 1.25% merit premium.

The "Computer Room Incident"

On May 2, 2006, Harrison Smith became upset over computer problems that caused her to loose several hours worth of work. The facts relating to this incident vary greatly. According to Harrison Smith, she went to speak with the computer technician about the situation. She admits to being agitated and to having a verbal exchange with the computer technician, Kevin Steele. She denies causing a disruption of the work environment or using any curse words. Mr. Steele did not complain about her behavior and has submitted an affidavit supporting Harrison Smith's version of events.

The Defendants state that Harrison Smith left her office and proceeded to walk

screaming down the hallway repeatedly using the "f-word".  A complaint regarding her behavior was made to Newsom by Brenda Campbell, the Administration Manager. Newsom then initiated an investigation and requested that Defendant Nancy Montague, the Deputy Director of the Park District, and Campbell's supervisor, obtain statements from employees present in the area at the time of the "incident".  Numerous witness statements support this version of events, although there were others that do not.  Neither Montague nor Campbell interviewed Mr. Steele.

Spreckelmeier, Harrison Smith's immediate supervisor, had been on vacation and upon his return was informed of Campbell's complaint.  Spreckelmeier attempted to obtain Harrison Smith's statement as to what had occurred on May 9, 2006.[2]  However, Harrison Smith sent an e-mail to Chief Newsom advising him she would not give a statement to Spreckelmeier without first being given access to the complaint and statements provided by other employees.   After much back and forth between Harrison Smith and Spreckelmeier, she eventually provided a statement.

Harrison Smith was disciplined on May 10, 2006 due to her conduct during the Computer Incident and the subsequent investigation.  She was immediately suspended without pay for five days and demoted two levels from the rank of Lieutenant to Ranger. Spreckelmeier found Harrison Smith "has little memory recall or is outright lying" and specifically required as a "standard" for her future performance that she "tell the truth."

_____

[2]On May 6, 2006, Harrison Smith injured her knee in a fall at home. Although scheduled to work, she was on medical leave on May 7 and 8, 2006 and returned on "light duty" on May 9, 2006. This was the first day both Spreckelmeier and Harrison Smith were present in the Ranger Department for Spreckelmeier to request her statement.

Harrison Smith alleges that this investigation should have been handled by internal affairs and that she should have been afforded the protections that type of investigation garners.

On May 12, 2006, Harrison Smith filed a request for a workplace resolution relating to her suspension.  In this request for a workplace resolution Harrison Smith asserted that she had a "diagnosed medical condition of perimenopause (symptoms of which may include hot flashes, irritability, mood swings, sudden tears, depression, anxiety, feeling ill at ease, feelings of dread, apprehension and doom, difficulty concentrating, disorientation, mental confusion, disturbing memory lapses among others) ...." (DX 85.)  Chief Newsom ordered that she undergo a fitness for duty evaluation before Dr. Janet Cobb.  He claims that this evaluation was necessary due to the fact Harrison Smith was a law enforcement officer whose duties required her to carry a gun and her statement she had a "diagnosed medical condition," which could cause symptoms including "feelings of dread, apprehension and doom" was of concern to the Ranger Department.  She was placed on paid administrative leave until completion of the evaluation.

On May 16, 2006 Harrison Smith filed a charge of gender discrimination and retaliation with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC").

On June 1, 2006, Dr. Cobb found Harrison Smith did not suffer from the symptoms of perimenopause.  Dr. Cobb noted Harrison Smith's gynecologist, Dr. Eva Ringgenberg, denied diagnosing Harrison Smith with any of the symptoms of perimenopause alleged by Harrison Smith although she did diagnose her with perimenopause because she was skipping periods.  Dr. Cobb found that Harrison Smith was at the age approaching memopause and cleared her for duty.  Based upon the fact that Dr. Cobb found that

Harrision Smith was not suffering from any of the physiological symptoms of perimenopause, the Defendants alleged that Harrison Smith misrepresented having been diagnosed with any "medical condition."

Afraid she would not be treated fairly, Harrison Smith requested that an independent arbitrator hear her grievance. This request was denied. She also had numerous complaints about the way the process was handled. Harrison Smith pursued her grievance along the steps proscribed by the policies of the Park District through Level 6 wherein Sutton ultimately decided that the disciplinary action was appropriate. Sutton based his determination on: 1) the deviation between Harrison Smith's version of events and the version of numerous witnesses; 2) her false claims of having been "diagnosed" with symptoms of a medical condition responsible for her behavior; 3) her conduct at the Level 6 hearing in which she was aggressive toward the other employees who were testifying; and 4) her failure to hold herself accountable for her own behavior.

Harrison Smith was instructed to attend anger management counseling with Concern Counseling Services because of her conduct at the hearing and the evidence elicited therein. She followed this directive and saw Amy Cohen at Concern Counseling Services from June 19, 2006 through December 2006. Cohen provided psychological counseling for her perceived anger management issues. She noted that Harrison Smith suffered from a great deal of stress due to the issues she was facing at work but that she was handling it well. Cohen did not find her unfit for duty.

MDC Workplace Resolution

On June 22 and 23, 2006, Harrison Smith, as well as other Ranger Department employees, attended Mobile Data Computer ("MDC") training. Prior to the training,

10

Harrison Smith's supervisor, Sergeant Mark Brooksbank, had advised Harrison Smith that Rangers would receive only eight hours of pay for attending eight hours of training per day in spite of the fact they had received ten hours of pay in the past.  On July 1, 2006, Harrison Smith was advised her time card had been changed to reduce the number of hours she would be paid for attending MDC training from ten hours per day to eight hours per day for each of the two days to reflect the actual amount of time spent in training. Spreckelmeier required all Rangers who attended the same MDC training as Harrison Smith be treated the same and similarly changed the time cards of all other Rangers to reflect eight hours of pay per day of training.  However, Harrison Smith alleges that the time cards of Rangers Tim Biaglow, Dan Hodapp and Sheli McDonough were not changed even though they attended the same training that Harrison Smith did.  On July 3, 2006, Harrison Smith filed a request for a workplace resolution complaining her timecard had been improperly changed. Harrison Smith did not take this grievance beyond Level 1.

Woodland Mound Park Assignment

On June 30, 2006, Harrison Smith sent an e-mail to Chief Newsom requesting the assignment she would be given upon her "anticipated" return to full duty following her knee injury in May. She had not received authorization from her doctor to return to full duty and she did not foresee receiving such authorization before August 10, 2006.  Spreckelmeier responded to Harrison Smith, advising her that upon her expected return to full duty on August 10, 2006, she would "be temporarily assigned to Woodland Mound to cover the shifts which were created by the vacancy of having Ranger McDonough assist with accreditation. Harrison Smith acknowledges, as of July 11, 2006, when Spreckelmeier advised Harrison Smith she would be assigned to Woodland Mound Park if she returned

11

to full duty on August 10, 2006, this was the only open full-duty position.  Prior to returning

to work, Harrison Smith filed a grievance as to this assignment.  Chief Newsom concluded

the assignment to Woodland Mound Park was appropriate.

Harrison Smith was eventually cleared to return to full duty on September 7, 2006

where she reported to Woodland Mound Park.  This was the first day that she worked as

a Ranger in the four months since her knee injury in May.  Unfortunately, on September

14, 2006, she fell over a concrete paver, injuring her wrists, while checking the concession

building at Breezy Point Pavilion.  She had to go to the Emergency Room at Mercy

Hospital.  Harrison Smith was on leave until September 20, 2006 when she returned to a

"light duty" assignment.   She then requested assignment to the Riding Center.

Spreckelmeier agreed to Harrison Smith's request and arranged for Harrison Smith to work

at the Riding Center.

The "Looker Incident"

As set forth above, on September 14, 2006, Harrison Smith fell at Woodland Mound

Park and remained off duty until September 20, 2006. The sick leave policy in effect at the

time provided:

> Employees are permitted a total of three incidents of up to a maximum of five
> scheduled shifts (days) of sick leave per fiscal year without a doctor's
> excuse. This does not include ... any time off where there is a doctor's
> excuse. Once an employee has taken the maximum of five scheduled shifts,
> they must automatically bring in a doctor's excuse. A doctor's excuse must
> be signed, dated and confirm the medical visit or state the employee was
> unable to perform their job duties for a specific period of time. Failure to bring
> in a doctor's excuse will result in appropriate disciplinary action.

On September 18, 2006, five days after her fall, Matt Looker, the Park District's Risk

Manager, contacted Harrison Smith to find out "the status of her work ability." He asked if

Mercy Anderson Hospital had given her a note for work. Harrison Smith told Looker she was not given a note. Looker told her he would wait to hear back from her once she had scheduled an appointment with Beacon Orthopedic.

Harrison Smith called Looker back later that day. Looker offered to find her a "light duty" assignment for September 19, 2006 so she would not have to use a sick day.  The facts relating to what happened next vary greatly.  According to Looker, Harrison Smith refused the offer of a "light duty" assignment becoming hostile and arguing Looker was requiring her to work patrol. He explained he was not suggesting she work patrol, but rather that she work a "light duty" assignment so she would not have to take sick leave. Harrison Smith became very upset and combative claiming the Park District wanted her to work patrol while she was hurt. Looker explained once again he was offering "light duty" and "it was up to her and her doctor if she wanted it."

According to Looker, Harrison Smith called him for a third conversation to ask if she was being required to work on September 19, 2006. He told her it was her decision. He advised her again that he needed a return to work statement from Beacon Orthopedic. She responded incongruently that Mercy Hospital "does not complete return to work statements" and she then hung up on him.

According to Harrison Smith, she was not required to use sick leave since her injury occurred at work and was covered under workers' compensation.  Even if she was using sick leave, September 19th was only the first shift she would have missed due to her injury.[3]

---

[3]The injury occurred on September 14th.  She took a holiday day on the 15th and was already scheduled off the 16-18th.  Therefore, a doctor's note was not yet required even if she was taking sick leave.

She also states that Looker did not offer her a "light duty" assignment but only said he checked to see if there were any "light duty" assignments available.  She stated that she could not perform "light duty" work as it would discredit her workers' compensation claim. She claims that she did not become upset, hostile or combative.

Looker filed a complaint in response to Harrison Smith's behavior. Upon receiving the complaint, Spreckelmeier requested Sgt. Leaman and Lt. Kandil investigate. On September 21, 2006, Leaman interviewed Harrison Smith. She denied being combative, insisting that it was harassment.     They gave Harrison Smith a Performance Advisory Form noting she "was asked to improve her working relationship with fellow employees." No discipline resulted from the incident.  During this meeting, Harrison Smith twice alleged "she was being attacked" by Looker and threatened to file a complaint against him.

Following her allegation in her meeting with Kandil and Leaman that she had been "attacked" by Looker, Sutton instructed Kandil and Sgt. Smyth to investigate. They attempted to interview Harrison Smith and requested that she provide a written statement detailing what had been said and done by Looker to make her feel she had been "attacked."  Harrison Smith states that she was not permitted to leave the interview, was not permitted a phone call and was ordered and coerced into writing a statement. She also states that she was told that her statement would only be used to investigate Looker but that it was actually sent to Dr. Daum as part of her fitness-for-duty evaluation.

Referral to Dr. Daum

According to Defendants, from May of 2006 forward, Harrison Smith's behavior deteriorated at a rapid rate reaching a low during the investigation of her allegations she had been "attacked" by Looker.  They state that she would become extremely emotional

14

when dealing with other employees, alternating between crying and screaming.  She was unable to make a decision without obtaining her husband's input and that she made other employees uncomfortable with her hostile demeanor, constant threats of filing grievances or lawsuits against them, threats of spilling the "dirt" on everyone, and habitually tape recording their conversations.   Spreckelmeier contacted Dr. James Daum, a police psychologist, to obtain his expert advice. Dr. Daum advised Spreckelmeier that Harrison Smith should be evaluated and provided Spreckelmeier with a checklist of thirty-one "areas of concern." According to Spreckelmeier, Harrison Smith exhibited 17 of the 31 behaviors. Spreckelmeier referred Harrison Smith to Dr. Daum for a fitness for duty evaluation.

It is Harrison Smith's view that this was another discriminatory and retaliatory action by Defendants to get rid of her even though she had been cleared for duty by Dr. Cobb and Amy Cohen.   She states that Spreckelmeier authored a very biased and misdirected referral to Dr. Daum and fails to mention that Dr. Cobb and Amy Cohen have found her fit for duty.

On October 9, 2006, Harrison Smith was placed on paid administrative leave pending the outcome of the evaluation.  On October 11, 2006, Dr. Daum met with Harrison Smith. On November 6, 2006, Dr. Daum determined Harrison Smith was psychologically unfit for duty.

That same day, Harrison Smith was notified of the determination and that her paid leave would be continued for sixty days while she evaluated her options, "including but not limited to applying for retirement, applying for disability retirement based on Dr. Daum's evaluation, or resignation."

On November 15, 2006, Harrison Smith filed another request for a workplace

15

resolution objecting to Dr. Daum's determination. On December 14, 2006, Sutton determined, based upon Dr. Daum's report, Harrison Smith could not return to a position as a Ranger. Harrison Smith was notified she could challenge Dr. Daum's determination if she so wished by obtaining her own psychological evaluation. She requested and the Park District agreed to an extension of time beyond the 60 days provided in Newsom's letter to obtain her own psychological evaluation which she did.  She retained Dr. Kenneth Manges.  The parties disagree as to what Dr. Manges report states.  Harrison Smith states that Dr. Manges found her to be fit for duty.  However, the Defendants believe that Dr. Manges tests results are paralleled to the results of Dr. Daum and although physically she may be fit for duty, psychologically she was not.

Dr. Manges' report was forwarded by the Park District's counsel to Dr. Daum who issued a supplemental report confirming his initial determination that Harrison Smith was unfit for duty as a Ranger. Dr. Daum noted: "I would agree with Dr. Manges that, based upon Ms. Harrison-Smith's presentation in October of last year, she does not present a threat of physical violence. However, I maintain that the other aforementioned issues render her not psychologically fit."

On December 19, 2006 Harrison Smith filed a second charge of gender discrimination and retaliation with the OCRC and the EEOC.

Termination

On August 31, 2007, based upon Dr. Daum's opinion, the Park District terminated Harrison Smith.  On September 11, 2007, Harrison Smith filed another request for a workplace resolution in response to her termination. On September 18, 2007, Harrison Smith filed a third charge of gender discrimination and retaliation with the OCRC and the

16

EEOC.  On September 19, 2007, Sutton denied Harrison Smith's request for reinstatement and this suit was filed on January 23, 2008.

    III.    <u>LEGAL ANALYSIS</u>

        A.    <u>Standard of Review</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of production, the non-moving party cannot rest on her pleadings, but must present significant probative evidence in support of her complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

"In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.

1989), cert. denied, 494 U.S. 1091 (1990); see also *L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc.,* 9 F.3d 561 (7th Cir. 1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir.), cert. denied, 506 U.S. 832, 121 L. Ed. 2d 59, 113 S. Ct. 98 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Beatty v. UPS,* 267 F. Supp. 2d 823, 829 (D. Ohio 2003).

### B.   Federal Age and Disability Discrimination

Harrison Smith has failed to address the arguments raised by Defendants in their motions for summary judgment as to her failure to exhaust her administrative remedies as they relate to her allegations of age discrimination under the ADEA as well as disability discrimination under the ADA.[4]  A plaintiff alleging employment discrimination must file a timely charge of discrimination with the EEOC before bringing suit in federal court. *Amini*

---

[4]The verified complaint also alleges that Harrison Smith was deprived of her rights as it relates to her age and disability claims under 42 U.S.C. §1983. (Doc. 1, ¶¶126, 136).  However, Section 1983 claims are barred when appropriate remedies, like those set forth in the ADEA and ADA, are available.  *See Janes v. Bardstwon City Sch. Bd. Of Educ.,* 1996 U.S. App. LEXIS 24997 (6th Cir. 1996) *citing Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364, 1366-69 (4th Cir.)  *cert. denied*, 493 U.S. 850 (1989) (ADEA) and *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002), *Lollar v. Baker*, 196 F.3d 603, 610 (5th Cir. 1999), *Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir. 1999)(en banc), *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997), *Cole v. Taber*, 587 F. Supp. 2d 856, 863 (W.D. Tenn. 2008) (ADA).  Harrison Smith does not raise any arguments to the contrary in her brief.

*v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001); *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 309 (6th Cir. 2000), *cert. denied*, 533 U.S. 951, 150 L. Ed. 2d 752, 121 S. Ct. 2594 (2001).  Harrison Smith merely states that the verified complaint supports her claims.  However, even though the verified complaint states that she filed an OCRC complaint jointly with an EEOC complaint based on age and disability discrimination, along with gender discrimination (see Doc. 1, ¶¶ 110, 112-113), the documents themselves show otherwise. See DX83, DX 89, DX297.

There is nothing in any of the three charges filed with the OCRC or EEOC that indicate any charge of age or disability discrimination.  In addition there is no evidence in the record to support an argument, nor does Harrison Smith make such an argument, that her claims of age and disability discrimination can reasonably be expected to grow out of the charges she did file.  Based upon Harrison Smith's failure to demonstrate to this Court that these claims should survive summary judgment (*see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)(Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment)) and this Court's failure to find any evidence in the record to support her claim of exhaustion as to her allegations of age and disability discrimination, the Court finds that summary judgment is appropriate on Counts Three and Five of the complaint.

C.   State Age Discrimination

Under Ohio law, a *prima facie* case of age discrimination may be proved either directly or indirectly. An employee "may establish a *prima facie* case of age discrimination directly by presenting evidence, of any nature, to show that an employer more likely than

not was motivated by discriminatory intent." *Mauzy v. Kelly Services, Inc*. (1996), 75 Ohio St.3d 578, 1996 Ohio 265, 664 N.E.2d 1272, paragraph one of the syllabus; *Smith v. E.G. Baldwin & Assoc., Inc*. (1997), 119 Ohio App. 3d 410, 415, 695 N.E.2d 349.  If direct evidence can not be shown, then a plaintiff may establish a *prima facie* claim of age discrimination indirectly by demonstrating she (1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age. *Coryell v. Bank One Trust Co., N.A.*, 101 Ohio St.3d 175, 2004 Ohio 723, at P 20, 803 N.E.2d 781.

If a *prima facie* case can be shown, then the burden shifts to the Defendant to show a legitimate, non-discriminatory reason for the adverse action.  However, for the reasons set forth below, Plaintiff can not establish a *prima facie* case so the Court will not consider the Defendant's legitimate, non-discriminatory reason.  Harrison Smith is over forty years of age and by definition is a member of the statutorily protected class.  She was also discharged.  Her qualification for the position is debated by the parties but even assuming the Court found her to be qualified Harrison Smith has not set forth any evidence that she was replaced by, or her discharge permitted the retention of, a substantially younger person.  She does not alert the Court as to who replaced her nor does she even set forth for the Court the age of any of her co-workers who she alleges were treated better than she was.  In addition, Harrison Smith does not even mention this claim in the argument section of her brief in opposition to summary judgment.  Therefore, summary judgment is appropriate as to Count Four.

D.   State Disability Discrimination

Like the age discrimination, a disability discrimination claim can be shown with direct or indirect evidence.  If no direct evidence is shown, which is the case here, a plaintiff must establish a *prima facie* case.  To establish a *prima facie* case of disability discrimination under R.C. 4112.02, a plaintiff must show that: (1) the employee was disabled, (2) that the employer took adverse employment action against the employee, which was caused, at least in part, by the employee's disability; and that (3) despite the disability, the employee can safely and substantially perform the essential functions of the job, with or without a reasonable accommodation. *Columbus Civil Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 571, 1998 Ohio 410; *Hood v. Diamond Products, Inc.* (1996), 74 Ohio St.3d 298, 302, 1996 Ohio 259, 658 N.E.2d 738.  If such a showing is made, the burden shifts to the Defendants to show a non-discriminatory reason for its actions.

Here, Harrison Smith can not show the first element of the *prima facie* case.  She has not shown any evidence that she suffered from a disability.  "A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999); *Daugherty v. Sajar Plastics Inc.,* 544 F.3d 696, 703.[5]  The key phrase in determining whether the employee has a disability is substantially limiting--"not in a trivial or even moderate manner, but in a major way." *Sheridan v. Jackson Twp. Div. of Fire*, 2009 Ohio 1267, P5-P7 (Ohio Ct. App., Franklin County Mar. 19, 2009)

---

[5]Since Ohio's disability discrimination law parallels the ADA in all relevant respects, federal case law interpreting the ADA is generally applicable to violations of O.R.C.  Chapter 4112. *City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 1998 Ohio 410 (1998).

*quoting Gonzales v. Natl. Bd. of Med. Examiners*, 225 F.3d 620, 627 (6th Cir. 2000). In fact, it is not even clear from the complaint or her brief in opposition to summary judgment what she alleges as her disability. She could be claiming to be disabled due to her diagnosis of perimenopause. However, her own doctor stated that she did not suffer any symptoms relating to that diagnosis other than she was missing periods and approaching the age of menopause. Missing periods do not qualify as a limitation on a major life activity. Harrison Smith does reference hot flashes and sweating as a symptom she was experiencing, however, these symptoms do not equate to an impairment that substantially limits a major life activity.

Although it is certainly not clear from the pleadings, it is possible that Harrison Smith could also be alleging that her unfit for duty determination by Dr. Daum is her disability. However, she contests that finding and produced a report by Dr. Manges that says she is, in fact, fit for duty. Furthermore, Harrison Smith is currently working as a police office and thus this alleged disability is not limiting a major life activity. Based upon the foregoing and Plaintiff's failure to direct the Court to evidence of a disability, summary judgment is appropriate as to Count Six.

E.     Intentional Infliction of Emotion Distress

To prove a claim for intentional infliction of emotion distress the Plaintiff must prove the following: (1) the defendant intended to cause the plaintiff serious emotional distress; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's conduct was the proximate cause of the plaintiff's serious emotional distress. *Fitzgerald v. Roadway Express, Inc.,* 262 F. Supp.2d 849, 858 (2003) *citing Phung v. Waste Management, Inc.*, 71 Ohio St.3d 408, 410 (1994). The Plaintiff must have suffered severe

22

emotional distress and not just embarrassment or hurt feelings. *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 10 Ohio B. 485, 462 N.E.2d 392 (1984).  Serious emotional distress is emotional injury which is both severe and debilitating. *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 6 Ohio B. 114, 451 N.E.2d 759 (1983).

Plaintiff has failed to produce evidence sufficient to raise a genuine issue of material fact on this claim.  She barely references this claim in her opposition to summary judgment. There is no evidence that defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.  There is also no evidence that plaintiff suffered severe emotional distress. For example, there is no evidence that plaintiff ever sought medical assistance for her alleged emotional distress other than seeing Amy Cohen, the anger management counselor that Harrison Smith was directed to see by the Park District.  Ms. Cohen was of the opinion that Harrison Smith was handling the stress well and was fit for duty.  *See Davis v. Billow Co. Falls Chapel*, 81 Ohio App.3d 203, 208, 610 N.E.2d 1024 (1991) (dismissing emotional distress claim of plaintiff who never sought medical assistance).  However, Harrison Smith does present the affidavit testimony of her husband, Smith, relating to her emotion state during the relevant time periods indicating that she cried alot, did not sleep well, ate very little and had problems concentrating.  Although these symptoms are troubling they are not consistent with the opinion of Amy Cohen and do not rise to the level of being severe and debilitating.  Defendants are entitled to summary judgment on Count Nine, plaintiff's claim of intentional infliction of emotional distress.

F.    Negligent Infliction of Emotional Distress

Plaintiff has also asserted a claim of negligent infliction of severe emotional distress.

23

However, under Ohio law, that tort is confined to situations in which the plaintiff was a bystander to an accident and suffered serious emotional distress as a result of his proximity to the peril created by the accident. See Kulch v. Structural Fibers, Inc., 78 Ohio St.3d 134, 163, 1997 Ohio 219, 677 N.E.2d 308 (1997). Such circumstances were not present in this case and Harrison Smith does not even address this claim in her opposition to summary judgment.  Thus, Defendants are also entitled to summary judgment on Count Ten.

> G.   Invasion of Privacy

Harrison Smith alleges that "confidential statements about [her] medical information are believed to have been disseminated among Park District employees." (Doc. 50, p46.)[6] Ohio law is clear that to establish a claim for invasion of privacy, a plaintiff must show "a wrongful intrusion into one's private activities in a manner that outrages or causes mental suffering, shame, or humiliation to a person of ordinary sensibilities." Peitsmeyer v. Jackson Tp. Bd. of Trustees, 2003 Ohio 4302, 2003 WL 21940713, *6 (Ohio App. 10 Dist. 2003) (citing Browning v. Ohio State Hwy. Patrol, 151 Ohio App.3d 798, 814, 2003 Ohio 1108, 786 N.E.2d 94 (10th Dist. 2003).   In addition, "[t]he intrusion must be 'highly offensive' to a reasonable person." Id.

Harrison Smith does not direct the court to any evidence in the record that would support her allegation that a "wrongful intrusion into her private activities" occurred.  The only statement is that she "believed" that her confidential medical information had been

---

[6]The verified complaint merely alleges that "During all times relevant hereto, Defendants violated Plaintiff's right to privacy protected under state law." (Doc. 1, ¶109.)

disseminated among Park District employees.  There is no evidence of any confidential information actually being disseminated, nor is there any evidence as to who disseminated the information to whom.  Harrison Smith's speculative belief is insufficient to support this claim.  Therefore, summary judgment is granted as to Count Eleven.

>    H.    Spoilation of Evidence

Harrison Smith alleges that Defendants failed to supply, and, in fact, destroyed records relating to Plaintiff's performance evaluations and other ordinary personnel records causing her money damages and emotional distress.  (Doc. 1, ¶160-165).

"Spoilation is the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for the destruction." *In re Smartalk Teleservices, Inc. Securities Litigation*, 487 F. Supp. 2d 947, 949 (S.D. Ohio 2007)(quoting *Beck v. Haik*, 377 F.3d 624, 641 (6th Cir. 2004). Ohio recognizes the spoilation of evidence as an independent cause of action. *Id.*  The elements of a spoilation claim, as they would be applied to this case, are: (1) there is a pending or probable litigation involving the non-offending party; (2) knowledge on the part of the offending party that the litigation exists or is probable; (3) wilful destruction of the evidence by the offending party designed to disrupt the non-offending party's case; (4) disruption of the non-offending party's case; and (5) damages proximately caused by the offending party's actions. *In re Smartalk*, 487 F. Supp. 2d at 949; *see also Herlik v. Cont'l Airlines, Inc.*, No. 04-3790, 2005 U.S. App. LEXIS 21784, 2005 WL 2445947 at *6 (6th Cir. Oct. 4, 2005); *Pullins v. Klimley*, 2008 U.S. Dist. LEXIS 3467, 13-14 (S.D. Ohio Jan. 7, 2008).

For support Harrison Smith attaches the sworn statement of Defendant Gary

Hoffman which states the following:

> I did not maintain any paper file for Ranger Harrison. The only "file" maintained for Ranger Harrison and other supervisors was in the form of a "folder" attached to the e-mail program, Outlook Express. For sergeants, selected e-mails for and from them or their districts were stored there. For lieutenants, selected e-mails sent by them to the districts or from me to them were stored in this file folder. These folders were then referenced during evaluation preparation and usually deleted sometime thereafter. The folder for "Harrison", along with those of other personnel, was deleted at my retirement or shortly thereafter.

(Doc. 1, Exh 1.)

Defendants counter that, first, they are immune from this state law tort, and, second, that even if they are not immune, Plaintiff has failed to establish the essential elements of a claim for spoilation. Specifically, Defendants argue that the information requested was deleted in the normal course of business in compliance with the Park District's records retention schedule and was not wilfully destroyed to disrupt Harrison Smith's case. Harrison Smith did not respond to Defendants' arguments and she did not set forth how she has been damaged by the failure to retain and produce this documentation or how the lack of these documents have disrupted her case. Thus, summary judgment is appropriate on Count Twelve.

## I.   Board of Park Commissioners

Defendant Board of Park Commissioners also moves for summary judgment on all claims against it arguing that Harrison Smith has not alleged any action that it took against her. Harrison Smith does not contradict this and, in fact, focuses her brief in opposition on the actions of Defendant Park District. Thus, since Harrison Smith can point to no evidence of any wrong doing on behalf of the Board of Park Commissioners, summary judgment as to all the claims against the Board of Park Commissions is appropriate.

J.     Gender Discrimination and Disparate Treatment

Harrison Smith alleges gender discrimination in violation of Title VII, 42 U.S.C.

§1983[7] and O.R.C. §4112.[8]  However, before the Court examines the claims of gender

discrimination, the Court will address the individual Defendants argument that they are

entitled to summary judgment on Harrison Smith's Title VII claims since no individual

liability exists under Title VII.[9]  This is an accurate statement of the law.  *See Wathen v.*

*GE,* 115 F.3d 400 (6th Cir.1997)("We now hold that an individual employee/supervisor,

who does not otherwise qualify as an 'employer,' may not be held personally liable under

Title VII.").  Plaintiff seems to concede this point and makes no arguments that any of the

individual Defendants "qualify as an employer."  See Doc. 50, p 50.  Instead, Plaintiff cites

qualified immunity law as it relates to the First Amendment, however, cases involving First

Amendment issues are distinguishable from Title VII cases and not applicable here.  Thus,

summary judgment is granted as to all Harrison Smith's Title VII claims, including gender

---

[7]Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere.  *Tuttle v. Oklahoma City,* 471 U.S. 808 (1985).  Since Title VII provides sufficient remedies for Harrison Smith's alleged deprivations of rights her Section 1983 can not stand.  *See Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1204 (6th Cir. 1984).

[8]The Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112."  *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).  Therefore, these claims will be analyzed together.

[9]The Defendants also raised this issue as to Plaintiff's ADA and ADEA claims; however, since the Court found that Plaintiff failed to exhaust her administrative remedies on those claims it did not focus on the other arguments raised by the Defendants.

discrimination, disparate treatment, retaliation and hostile work environment[10], against

Steve Newsom, Richard Speckelmeier, Jack Sutton, Nancy Montague and Gary Hoffman.

Because O.R.C. §4112 is similar to Title VII and the Ohio Supreme Court has held that

"federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable

to cases involving alleged violations of R.C. Chapter 4112," summary judgment is also

appropriate on Plaintiff's state law claims under Chapter 4112 against the individual

defendants. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights

Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).[11]

Gender discrimination can be shown by direct or indirect evidence. Direct evidence

is that evidence which, if believed, requires the conclusion that unlawful discrimination was

at least a motivating factor in the employer's actions. *See Talley v. Bravo Pitino

Restaurant, Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995)(quoting *Terbovitz v. Fiscal Court of

Adair County*, 825 F.2d 111, 114-5 (6th Cir. 1987)); *Harrison v. Olde Fin. Corp.*, 225 Mich.

App. 601, 572 N.W.2d 679, 683 (Mich. Ct. App. 1997). Examples of direct evidence are

a facially discriminatory employment policy or a corporate decision maker's express

statement of a desire to remove employees in the protected group. *Nguyen v. City of*

---

[10]See discussion below as to this alleged claim.

[11]In addition, although neither party raises the argument, the Court points out that
"it is well settled that a party not named in an EEOC charge may not be sued under
Title VII unless there is a clear identity of interest between it and a party named in the
EEOC charge or it has unfairly prevented the filing of an EEOC charge. *Jones v. Truck
Drivers Local Union No. 299*, 748 F.2d 1083, 1086 (6th Cir.1984). "A 'clear identity of
interest' implies that the named and unnamed parties are virtual alter egos." *Knafel v.
Pepsi-Cola Bottlers, Inc.,* 899 F.2d 1473 (6th Cir.1990). *See also Smith v. Sofco, Inc.,*
1998 U.S.App. LEXIS 3896 (6th Cir.1998). Here, the individually named Defendants
were not named in the EEOC or OCRC charge and do not reach the level to be a "clear
identity of interest," thus, summary judgment can be granted on this basis as well.

*Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), *citing*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) and *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379-80 (6th Cir.1993).  Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. Mich. 1999).

If direct evidence is not available, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies.  To establish a prima facie case of gender discrimination, the employee must show that 1) she was a member of the statutorily-protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position; and 4) she was replaced by a person, or treated differently from similarly situated individuals,[12] not belonging to the protected class.  *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792; *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004), *citing*, *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).  A plaintiff has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802.  However, the burden of establishing a *prima facie* case is not intended to be an onerous one. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001).

If the plaintiff succeeds in establishing a *prima facie* case, an inference of discrimination arises, and the burden then shifts to the defendant to articulate some

---

[12]A Title VII gender discrimination claim under a disparate treatment theory is also to be analyzed using the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), thus, Harrison Smith's gender discrimination claim and her disparate treatment claim will be discussed together.

legitimate nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). If the defendant articulates a nondiscriminatory reason for its actions, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons put forth by the defendant were not its true reasons but were a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802. The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253.

As to the claim of gender discrimination against the Park District, Harrison Smith alleges that there is direct evidence. She alleges that Newsom called her a "femo" and accused her of playing the "female card" to get a promotion during her one-on-one interview with him for the assistant chief position. The Park District argues that "femo" is not a derogatory term since it is one that Harrison Smith often called herself. Based upon the fact that Plaintiff called herself and other female rangers "femos" at varies times, the Court does not find that this is sufficient enough to constitute direct evidence of discrimination. Although the accusation that Newsom accused Harrison Smith of using the "female card" is more troubling, it too does not lead the Court to the conclusion that her gender was at least at least a motivating factor in the decision to not hire Harrison Smith for the assistant chief position. In addition, Harrison Smith told Mark Brooksbank that "all she had was the female card and she was going to play it." (Brooksbank Aff., Doc. 43-4, p70.) Therefore, the Court will do the *burden-shifting* analysis.

As to the first and second prongs, it is undisputed that Harrison Smith is a female and that she suffered an adverse employment action. Although Defendants acknowledge

that her termination is an adverse action, the parties disagree as to what other events constitute an adverse employment action.  An adverse employment action has been defined as a "materially adverse change in the terms and conditions of [plaintiff's] employment."  *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir.1999).  A "mere inconvenience or an alteration of job responsibilities" or a "bruised ego" is not enough to constitute an adverse employment action. *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 797 (6th Cir. 2004).  Examples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation.  *Smith v. City of Salem, Ohio*, 378 F.3d 566, 575-76 (6th Cir. 2004), *citing*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *White*, 364 F.3d at 798.  The Sixth Circuit has repeatedly found that an involuntary transfer or reassignment, absent loss of pay or benefits, does not constitute a materially adverse change in employment.  *See, e.g., Akers v. Alvey*, 338 F.3d 491, 498 (6th Cir. 2003) (finding no materially adverse change where as a result of plaintiff's involuntary transfer to another office, plaintiff suffered no decrease in pay, her job duties were not significantly changed, and the transfer actually reduced her commute); *Bowman v. Shawnee State Univ*., 220 F.3d 456, 462 (6th Cir. 2000) (finding no materially adverse change where plaintiff was removed from coordinator position for only approximately ten days with no loss of income).  A low performance evaluation does not constitute an adverse employment action either.  *Primes v. Reno*, 190 F.3d 765 (6th Cir. 1999)(a low performance evaluation did not constitute an adverse action for purposes of a Title VII disparate treatment claim where there was no evidence that the plaintiff suffered

any material change in the terms and conditions of her employment).

The Court finds that the claim of failure to promote to the assistant chief position,[13] the suspension/two level demotion and her termination constitute adverse employment actions.  To the extent that Harrison Smith alleges that the referrals to Dr. Cobb, Amy Cohen and Dr. Daum, the reduction in her pay to reflect the actual time she was in training, the denial of due process, the denial of training, and the denial of shorts and body armor are adverse employment actions, the Court disagrees.  These events do not rise to the level of a materially adverse change in employment.

The parties dispute the third prong, that she was qualified for the position.  Plaintiff asserts that she was qualified and the Park District counters that she was found to be unfit for duty and therefore not qualified for her position.  There is a question of fact as to this issue.

Finally, as to the final prong, the evidence is undisputed that Harrison Smith was not replaced upon her termination, a fact Harrison Smith does not dispute.  When it finally did hire new rangers, all three hirees were female.  Therefore, summary judgment is appropriate as to the Title VII claims in Count I.[14]  However, Harrison Smith argues that she

_____

[13]Harrison Smith failed to timely file an EEOC charge relating to her failure to promote claim.  Spreckelmeier was named the new assistant chief on February 16, 2005.  Harrison Smith did not file her first EEOC charge until May 16, 2006.  In Ohio, a deferral state, a claimant has 300 days to file a charge with the EEOC under Title VII, which begin to run at the time the alleged discriminatory act is communicated to the plaintiff.  *Amini v. Oberlin College*, 259 F.3d 493, 498-499 (6th Cir. 2001).  Thus, the failure to promote to the assistant chief position can not be considered an adverse action in terms of Title VII, however, it is an adverse action for purposes of Plaintiff's state law claim.

[14]The Court notes that there is not a Count II in the complaint.

was treated differently from similarly situated individuals not belonging to the protected class.  In establishing that a person is similarly situated, a "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.' " *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709-710 (6th Cir. 2006).  Instead, to establish that an employee is an appropriate comparator, "the plaintiff [must] demonstrate that he or she is similarly situated to the [claimed comparator] in all relevant respects."  *Wright*, 455 F.3d at 710, *quoting Ercegovich*, 154 F.3d at 353. In the disciplinary context, the Sixth Circuit has held that to be found similarly situated, "the plaintiff and [her] proposed comparator must have engaged in acts of 'comparable seriousness.' "  *Id.*, *quoting Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002); *see also Macy v. Hopkins County School Bd. of Educ.*, 484 F.3d 357, 370 (6th Cir.  2007) (explaining that where incidents of misconduct giving rise to discipline form the crux of the similarities between employees, the degree of their misconduct is a factor to be given great weight).  To make this assessment, a court must look "to certain factors, such as whether the individuals 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"  *Wright*, 455 F.3d at 710, *quoting Ercegovich*, 154 F.3d at 352.

    Here, Harrison Smith argues that several male supervisors, including former Chief Greer, engaged in comparable behavior and were not given a demotion, let alone a suspension and a two-level demotion.  In particular, she alleges that former Chief Greer

used the "f-word" during a "heated discussion" and received the lowest level of discipline for his behavior, counseling.  (See Doc. 1, ¶105).  This incident was investigated by Sutton. However, Sutton points out that Greer immediately admitted to the allegation and apologized, making his actions distinguishable to those of Harrison Smith who was not as cooperative in the investigation.[15]  She also alleges that a complaint was made against him for calling a female officer a "girl" and that this was "swept under the rug."  Finally, she alleges that there was an incident where Greer was accused of making inappropriate comments that included "raping and pillaging" and "mud pit."  Even though Greer failed to recall making these comments, he was only given counseling as his discipline.

She also argues that Ken Schneider often used offensive language and was never disciplined for his behavior.  However, other than stating that Ken Schneider was the "Park District's funny man", there are no other facts presented for the Court to make a comparison.

Harrison Smith argues that Jim Brietenbach, the former Recreation Direction, is a comparator since he engaged in behavior that was far more serious than her behavior. She also alleges that former Director Jon Brady used the "f-word" and made physical contact with Brietenbach during an argument.  Brady was removed from his supervisory capacity until he retired and Brietenbach was placed on administrative leave until his retirement.

Finally, she argues that Chief Newsom sent an inappropriate and sexually

---

[15]Harrison Smith also argues that Greer was involved in an "physical assault on a subordinate while engaged at work."  However, she does not direct the Court to any evidence to support this allegation and it is not mentioned in the verified complaint.

suggestive email which Sutton investigated.  Sutton gave Newsom a written reprimand.

Defendants argue that these individuals are not comparable because none of the incidents involved dishonesty nor did any of the actions take place while Newsom was chief (except for the allegation pertaining to the email) but instead took place while Greer was Chief.  Furthermore, Brady and Greer were at least two levels above that of Lieutenant and, therefore, not comparable to Harrison Smith.  Neither is Newsom.  In addition, they argue that Brietenbach was not an employee of the Park District and did not perform the same duties or hold the same responsibilities as Harrison Smith.

Harrison Smith has not presented any evidence of comparators who were treated more favorable than she was while Spreckelmeier was her supervisor and Newsom was Chief.  However, she argues that since all this occurred under "Sutton's decision making purview" that they are similarly situated.  The Court disagrees.  Spreckelmeier is the supervisor who issued Plaintiff's discipline, not Sutton.  And none of the others mentioned above were under Spreckelmeier's or even Newsom's supervision at the time of their incidents.  In addition, the conduct engaged in had differentiating or mitigating circumstances distinguishing it from Harrison Smith's conduct.  The Park District did not believe that any of the above were involved in dishonesty or lied.  Thus, the inquiry into her demotion based upon gender discrimination stops here.

As to her termination, Harrison Smith does not allege that there were comparable male rangers or supervisors who were found to be unfit for duty but were not terminated.  Since she can not show that similarly situated males were treated better as to her termination she can not establish the fourth prong and can not make a *prima facie* case on this issue.  Thus, the inquiry into her termination based upon gender discrimination

stops here.  Therefore, summary judgment is appropriate as to Count VII.

Now in reviewing the failure to promote claim, the *prima facie* case is modified some.  To prove a *prima facie* case on a failure to promote claim, a plaintiff must demonstrate that she is (1) a member of a protected class; (2) she applied for and was qualified for the promotion sought; (3) she was considered for and denied the promotion; and (4) someone of similar qualifications who was not a member of the protected class received the job.  *White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 240 (6th  Cir. 2005); *Rice v. Cuyahoga County DOJ*, 2005 Ohio 5337, P41.  To determine whether the fourth prong has been met, the Court may examine the qualifications of both the Plaintiff and the person who was hired for the position.  *Id.* at 242; *Brewer v. Cedar Lake Lodge, Inc.*, 423 Fed. Appx. 980, FN6, 2007 U.S. App. LEXIS 18498 (6th Cir. 2007).  Harrison Smith has demonstrated each of the four prongs.  The first three prongs are undisputed.  It is not clear from the briefs if the Defendants dispute the fourth prong; however, the evidence shows that Harrison Smith has similar qualifications as Spreckelmeier.  Thus, the burden shifts to the Park District to show a legitimate, non-discriminatory reason.

The Park District states that Newsom did not promote Harrison Smith to Assistant Chief because he had too close of a friendship with her and her husband to be objective. The Defendant has met its burden and now the burden shifts back to Plaintiff to establish that this reason is a pretext for gender discrimination.  The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to

motivate the adverse action.  *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078,

1084 (6th Cir.1994).  "A reason cannot be proved to be 'a pretext for discrimination' unless

it is shown both that the reason was false, and that discrimination was the real reason." *St.*

*Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Unsupported speculation cannot form the basis for demonstrating pretext.  *See Sutherland*

*v. Michigan Dept. of Treasury*, 344 F.3d 603, 623 (6th Cir. 2003).  The Sixth Circuit has

recognized that evidence of pretext may consist of a defendant's changing explanations.

*Cichewicz v. UNOVA Indus. Automotive Systems, Inc.*, 2004 WL 291178, *4 (6th Cir. Feb.

12, 2004) (unpublished), *citing Fox v. Certainteed Corp.*, 1999 WL 1111495, at *5 (6th Cir.

Nov. 23, 1999) (unpublished) (explaining that evidence tending to demonstrate the falsity

and inconsistency of the employer's explanations for the plaintiff's discharge may raise an

inference of pretext);  *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 526 (11th Cir. 1994)

("identification of inconsistencies in the defendant's testimony is evidence of pretext");

*EEOC v. Ethan Allen*, 44 F.3d 116, 120 (2d Cir. 1994) (explaining that discrepancies in a

defendant's explanations constitutes evidence of pretext); *Lent v. Goldman Sachs &*

*Company*, 1998 WL 915906, at *8 (S.D.N.Y. Dec. 30, 1998) (unpublished) ("[w]hat

defendant calls 'minor inconsistencies' may be evidence of pretext ").  Here, Plaintiff has

shown two different explanations given as to why Harrison Smith was not given the

promotion-that Newsom could not be objective and that Spreckelmeier was a better fit.

Thus, a question of fact exists as to whether discrimination was the real reason.  Summary

judgment is denied as the failure to promote claim under O.R.C. 4112 of Count I.

      K.    <u>Retaliation</u>

Title VII prohibits retaliatory actions against employees who oppose, report or participate in investigations involving conduct that allegedly violates Title VII.   *See* 42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation, a plaintiff can either present direct evidence of retaliation or use the *McDonnell Douglas* framework to infer retaliation from circumstantial evidence. To prove a *prima facie* claim of retaliation under the *McDonnell Douglas* framework the Plaintiff must show: (1) he engaged in protected activity, (2) the Defendant was aware of the protected activity, (3) the Defendant subsequently took an employment action adverse to the Plaintiff, and (4) a casual connection exists between the protected activity and the adverse employment actions. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

As previously set forth above, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, <u>specifically called to its attention by the parties</u>."  *Beatty v. UPS,* 267 F. Supp. 2d 823, 829 (D. Ohio 2003)(emphasis added).  In Plaintiff's entire fifty-three page memorandum in opposition, retaliation is only mentioned twice.  On page 49, Harrison Smith argues that "... most of the expended resource is in the form of an investigation into alleged non-specified policy violations by Plaintiff, and in retaliation for her asserting and exercising her civil rights."  She goes on, at page 50, to state, "Plaintiff is also the victim of a systemic course of disparate impact and has been retaliated against by Defendants." (Doc. 50.)  Plaintiff has failed to call any evidence to the Court's attention to support her retaliation claim.  Despite this failure, the Court will continue with the

analysis.

Harrison Smith alleges that Hoffman's low score in the "teamwork" category on her performance review due to "recent indication of a sexual discrimination lawsuit " is direct evidence of discrimination - although the Court will consideration it as such here in terms of the retaliation claim.  An action violates Title VII if it discriminates "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  The Sixth Circuit has held that lowered evaluations "could . . . dissuade[] a reasonable worker from making . . . a charge of discrimination" if they "significantly impact an employee's wages or professional advancement." *Lahar v. Oakland County*, 304 Fed. App'x. 354, 357 (6th Cir. 2008) *quoting Halfacre v. Home Depot, USA, Inc.*, 221 F. App'x 424, 432, 433 (6th Cir. 2007) (internal quotation marks omitted) (alteration in original).  However, such is not the case here. Plaintiff still received her merit premium and after Chief Newsom revised the evaluation, she received the same score that she received the previous year.  Since the evaluation was not related to her compensation, terms, conditions or privileges of employment, retaliation cannot be shown as to this incident.  No other evidence of direct retaliation has been shown.

Turning to the first prong of the burden-shifting analysis, Harrison Smith filed her first charge with the EEOC on May 16, 2006.  Thus, she did engage in protected activity and there is no dispute that the Defendants were aware of this activity.  As to the third prong, whether the Defendant subsequently took an employment action adverse to the Plaintiff, this will require a discussion as to what constitutes an adverse action and whether the actions occurred prior to the filing of her EEOC charge.

39

The Supreme Court has defined what constitutes an adverse employment action in the retaliation context. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 126 S.Ct. 2405 (2006). In *Burlington N.*, the Supreme Court held that an adverse employment action is any material action, which might dissuade "a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68 (internal quotations omitted). The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. *Id*. at 67. "Normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id*. at 68. Taking this definition into consideration, the Court determines that the failure to promote to the assistant chief position, the suspension/two level demotion, the referrals to Dr. Cobb, Amy Cohen and Dr. Daum, and her termination constitute adverse employment actions. To the extent that Harrison Smith alleges that the reduction in her pay by two hours to reflect the actual time she was in training, the denial of due process, the denial of training, and the denial of shorts and body armor are adverse employment actions, the Court disagrees.

Although her claim of failure to promote is an adverse action, Harrison Smith has not shown that she engaged in any protected activity at the time she learned she was passed over for the promotion in February, 2005. In fact, she did not even file her first EEOC and OCRC charge until fifteen months later.

As to the suspension/two-level demotion, this discipline was given on May 10, 2006 and it was not until May 16, 2006 that Plaintiff first filed a charge with the OCRC and the EEOC. Thus, there can be no retaliation. It could be argued that since Plaintiff led the Defendants to believe that she filed a lawsuit, or, at least the very least, she threaten to do so, that this constitutes protected activity. However, the statement about a lawsuit was

made six months before she was disciplined and she admitted even after she was disciplined that she had no intention of filing a lawsuit against the Park District. Therefore, even if the Court were to agree that this is protected activity, Plaintiff has failed to establish a causal connection between her alleged lawsuit or threat to file a lawsuit and her suspension/demotion.

To show a causal connection, a plaintiff must adduce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken if the plaintiff had not engaged in protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (*quoting EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)); Jackson v. RKO Bottlers, 743 F.2d 370, 377 (6th Cir. 1984). There is no one dispositive factor required to establish a causal connection. *Id.* Plaintiff has not met that burden as to her suspension/demotion.

Harrison Smith was referred to Dr. Cobb for a fitness for duty evaluation on May 22, 2006, just a few days after the EEOC charge was filed. However, this referral was based upon statements made by Harrison Smith that she had a diagnosed medical condition that could include symptoms of depressions, anxiety, feelings of dread, apprehension and doom, to name a few. Obviously, as a police office who carries a gun as part of her duties, such a referral is a legitimate response to the statement made by Harrison Smith. Even if the Court were to consider the close proximity of the referral to Dr. Cobb and the EEOC charge to show a causal connection, given the Park District's explanation as to why the referral occurred and nothing to the contrary from Plaintiff, she has failed to make her claim. *See Stone v. Bd. of Dirs. of the TVA*, 35 Fed. Appx. 193, FN1 (6th Cir. Tenn. 2002). The same applies as to the anger management referral to Amy Cohen and the fitness for

41

duty evaluation to Dr. Daum.  *See Stone v. Bd. of Dirs. of the TVA*, 35 Fed. Appx. 193, FN1 (6th Cir. 2002)(where expressions of anger are demonstrated, the ordering of an examination based upon that behavior is a legitimate nondiscriminatory reason).

As to her termination, the Park District terminated Harrison Smith because Dr. Daum found her to be unfit for duty, a legitimate nondiscriminatory reason.  Again, Harrison Smith has not presented any evidence to show a causal connection to her filing of the EEOC charges.  Therefore, based upon the above, summary judgment is appropriate on Count Eight.

L.     Sexual Harassment/Hostile Work Environment

The Defendants briefed the issues of sexual harassment and hostile work environment; however, Harrison Smith did not specifically raise these claims in her complaint other than to vaguely say that she was harassed and endured a hostile work environment.  See for example Doc. 1, ¶16, 25, 34 and 35.  Her complaint specifically sets out eleven causes of actions and sexual harassment and hostile work environment are included.  In addition, Plaintiff's memorandum in opposition to summary judgment does not respond to the arguments of Defendants as to these issues.  Therefore, this claim is deemed waived.  *Scott v. Tennessee*, 878 F.2d 382 (6th Cir. Tenn. 1989)(if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion).

M.     Punitive Damages

The only remaining claim is the state law failure to promote claim against the Park District.  As the Park District points out, without rebuttal from the Plaintiff, O.R.C. 2744.05(A) disallows punitive damages against a political subdivision.  Therefore, Harrison

Smith is not entitled to punitive damages.

IV.   Conclusion

Based upon the foregoing, the motion for summary judgment of Defendants Board of Park Commissioners, Steve Newsom, Rick Spreckelmeier, Jack Sutton, Nancy Montague and Gary Hoffman (Doc. 43) is hereby GRANTED.  The motion of Defendant Hamilton County Park District (Doc. 31) is hereby GRANTED, in part, and DENIED, in part. Plaintiff's claim of gender discrimination for failing to promote under O.R.C. §4112 shall proceed to trial[16].  Defendants' motion to strike (Doc. 67) is hereby GRANTED, in part, and DENIED, in part.

**IT IS SO ORDERED.**

s/Michael R. Barrett_____
UNITED STATES DISTRICT JUDGE

---

[16]Although the Court could decline jurisdiction over this state law claim, see 28 U.S.C. § 1367(c)(3), in the interest of judicial economy, convenience and fairness, the Court will retain jurisdiction.